In the

# United States Court of Appeals
## for the Eleventh Circuit

Jekyll Island-State Park Authority,

*Plaintiff-Appellant*,

v.

Polygroup Macau Limited,

*Defendant-Appellee*.

On Appeal from the United States District Court for the
Southern District of Georgia, Brunswick Division.
No. 2:21-CV-8 – Hon. Lisa Godbey Wood, *Judge*

## BRIEF OF APPELLANT

Katrina M. Quicker
*Special Asst. Atty. General*

Christopher M. Carr
*Attorney General of Georgia*

Logan Winkles
*Deputy Attorney General*

Amy Patterson
*Senior Asst. Attorney General*

Frances Mulderig
*Assistant Attorney General*

Quicker Law, LLC
900 Circle 75 Parkway,
Suite 100
Atlanta, Georgia 30339
(678)750-0450
kquicker@quickerlaw.com

Office of the Georgia
Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3592
fmulderig@law.ga.gov

*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Bradberry, Kevin Daniel, former counsel for Appellant Jekyll Island-State Park Authority

Carr, Christopher M. Attorney General of the State of Georgia, Counsel for Appellant Jekyll Island-State Park Authority

Carron, Virginia, former counsel for Appellee Polygroup Macau Limited

Jekyll Island-State Park Authority, Appellant

Mulderig, Frances, counsel for Appellant Jekyll Island-State Park Authority

Patterson, Amy, Counsel for Appellant Jekyll Island-State Park Authority

Polygroup Asia Pacific Limited, parent corporation of Appellee Polygroup Macau Limited

Polygroup Macau Limited, Appellee

Polygroup Limited Macau (Commercial Offshore), subsidiary of Appellee Polygroup Macau Limited

Polygroup Services NA, related to Appellee Polygroup Macau Limited

Polygroup Trading Limited, related to Appellee Polygroup Macau Limited

Polytree (H.K.) Co. Ltd., related to Appellee Polygroup Macau Limited

Quicker, Katrina M., counsel for Appellant Jekyll Island-State Park Authority

Tanner, Robert Brian, counsel for Appellee Polygroup Macau Limited

Vance, Kathryn A., counsel for Appellant Jekyll Island-State Park Authority

Ward, Trenton, counsel for Appellee Polygroup Macau Limited

Winkles, Logan, counsel for Appellant Jekyll Island-State Park Authority

Wood, Lisa Godbey, United States District Judge

Wright, Robert Gordon, former counsel for Appellee Polygroup Macau Limited

/s/ *Frances Mulderig*
Counsel for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Jekyll Island-State Park Authority requests oral argument in this case. This case presents complex issues related to personal jurisdiction and oral argument could aid in the decisional process.

# TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument..............................................i

Jurisdiction ......................................................................... vii

Statement of Issues ................................................................ 1

Introduction ......................................................................... 2

Statement of the Case............................................................. 5

    A. Factual Background ............................................................ 5

    B. Proceedings Below.............................................................. 9

    C. Standard of Review ........................................................... 10

Summary of Argument ................................................................ 11

Argument ............................................................................. 15

    I. The district court had specific personal jurisdiction over Jekyll's federal trademark infringement and unfair competition claims. ........................................................... 15

        A. Exercising jurisdiction over Polygroup Macau Limited is consistent with the United States Constitution and laws. ............................................................................... 16

            1. A strong relationship exists between Jekyll's trademark infringement and unfair competition claims and Polygroup Macau Limited's registering of infringing marks in the United States. ................... 21

            2. A strong relationship exists between Jekyll's trademark infringement and unfair competition claims and Polygroup Macau Limited's unfettered permission to use these marks in commerce in the United States. ......................................................... 24

B. Polygroup Macau Limited purposefully availed itself of the privilege of conducting activities within the forum of the United States. ....................................................... 29

1. Polygroup Macau Limited has purposefully availed itself of the United States under the "effects test".. 30

2. Polygroup Macau Limited has purposefully availed itself of the United States under the "minimum contacts" test. ........................................................ 32

3. Exercising jurisdiction over Polygroup Macau Limited would comport with traditional notions of fair play and substantial justice. ............................ 35

II. Jurisdiction is also proper regarding Jekyll's trademark cancellation claims............................................................ 36

III. Jekyll's other claims may proceed if Polygroup Macau Limited is subject to personal jurisdiction on any claim ... 40

Conclusion .................................................................................... 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Breckenridge Pharmacy, Inc v. Matabolite Labs, Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006)...........................................26, 27

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................. 16

*Del Valle v. Trivago GmbH*,
  56 F.4th 1265 (11th Cir. 2022)..........................................*passim*

*Ditri v. Coldwell Banker Residential Affiliates, Inc.*
  954 F.2d 869 (3rd Cir. 1992) .................................................... 39

*Don't Look Media LLC v. Fly Victor Ltd.*,
  999 F.3d 1284 (11th Cir. 2021) ................................................ 10

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*,
  332 F.3d 264 (4th Cir. 2003) ...............................................21, 22

*Ford Motor Company v. Montana Eighth Judicial
  District Court*,
  141 S. Ct. 1017 (2021) ......................................................*passim*

*Herederos De Roberto Gomez Cabrera, LLC v. Teck Res.
  Ltd*,
  43 F.4th 1303 (11th Cir. 2022)................................16, 30, 32, 37

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
  256 F.3d 548 (7th Cir. 2001) ...............................................38, 39

*Licciardello v. Lovelady*,
  544 F.3d 1280 (11th Cir. 2008) ...........................................30, 31

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ...........................................30, 31

*Nike, Inc. v. Already, LLC*,
    663 F.3d 89 (2d Cir. 2011)........................................... 39

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) .......................................9, 15, 37

*Plixer Int'l v. Scrutinizer GmbH*,
    905 F.3d 1 (1st Cir. 2018)............................................ 36

*Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp*,
    257 F.2d 485 (3d Cir. 1958)......................................... 41

*SkyHop Techs., Inc v. Narra*,
    58 F.4th 1211 (11th Cir. 2023)...........................*passim*

*Touchcom, Inc. v. Bereskin & Parr*,
    574 F.3d 1403 (Fed. Cir. 2009)................................... 40

*Trimble Inc. v. PerDiemCo.*
    997 F.3d 1147 (Fed. Cir. 2021).................................. 26

*Universal Music MGB NA, LLC v. Quantum Music
Works, Inc.*,
    769 F. App'x 445 (9th Cir. 2019) ............................... 25

**Statutes**

15 U.S.C. § 1051................................................ viii, 21

15 U.S.C. § 1114.................................................. 9

15 U.S.C. § 1119...............................................*passim*

15 U.S.C. § 1125(a) ............................................. 9

28 U.S.C. § 1291.................................................. viii

28 U.S.C. § 1331................................................. viii

## Other Authorities

Fed. R. App. P. 32(a)(5)................................................................... vi

Fed. R. Civ. P. 4(k)(1)................................................................... 15

Fed. R. Civ. P. 4(k)(2).........................................................*passim*

Federal Rules of Appellate Procedure Rule 32(a)(7)(B)................. 1

# JURISDICTION

The district court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Appellant has asserted claims pursuant to the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*.

This court has appellate jurisdiction under 28 U.S.C. § 1291, because the district court issued a final judgment dismissing the Appellant's claims without prejudice.

This appeal is timely because the judgment dismissing the Appellant's claims was entered on March 27, 2023, and the Appellant filed its Notice of Appeal on April 25, 2023.

# STATEMENT OF ISSUES

1.  Whether the district court applied an erroneous "but for" standard to determine whether Jekyll Island-State Park Authority's federal trademark infringement and unfair competition claims "arose out of or were related to" Polygroup Macau Limited's contacts with the United States under Federal Rule of Civil Procedure 4(k)(2).

2.  Whether the district court erred in holding that it did not have personal jurisdiction over Polygroup Macau Limited under Federal Rule of Civil Procedure 4(k)(2) for the purpose of adjudicating Jekyll's federal trademark infringement and unfair competition claims.

3.  Whether the district court erred in holding that Federal Rule of Civil Procedure 4(k)(2) did not apply to Jekyll's trademark cancellation claims filed under 15 U.S.C. § 1119.

# INTRODUCTION

This appeal addresses whether an intellectual property holding company that avails itself of the United States' laws and protections—including registering for protections with the United State Patent and Trademark Office, suing in United States courts to enforce those rights, and granting perpetual royalty-free permission to related companies to use its trademarks in commerce in the United States—is nevertheless immune from a trademark infringement suit in the United States because it has registered as a foreign corporation. The district court said that such a holding company is immune, and it was wrong. This Court should reverse.

Polygroup is a multinational family of related companies. These entities are collectively in the business of manufacturing, marketing, and selling consumer goods like above-ground pools and inflatable pool toys both inside and outside the United States. Defendant-Appellee Polygroup Macau Limited is a foreign trademark and patent holding company and a member of the Polygroup family.

Polygroup Macau Limited makes these intellectual property assets available to three other Polygroup entities in what amounts to royalty-free perpetual permissions. Among these entities is

Polygroup Services, N.A., a Delaware company that exists to conduct business in the United States and "provide services to the other entities in the group if they have needs in the United States." Doc. 51-18 at 81.

Polygroup Macau Limited makes extensive use of the United States Patent and Trademark Office and federal courts. It has appeared as a party multiple times and has sought to enforce its intellectual property rights as a plaintiff in at least four of these cases.

Among the intellectual property that Polygroup Macau Limited holds in the United States and makes available to Polygroup Services, N.A. are three "Summer Waves" trademarks that infringe on the "Summer Waves" trademark held by the Plaintiff-Appellant Jekyll Island-State Park Authority. As a result of these actions, infringing products are available for purchase in the United States, both online and in retail stores. Polygroup Macau Limited knows that its marks impact Jekyll's mark because Polygroup Macau Limited reached out to Jekyll and sought to purchase its summerwaves.com domain name.

But despite Polygroup Macau Limited's purposefully directed actions, which allow the marketing and sale of products that infringe on Jekyll's mark, the district court held that it lacked

personal jurisdiction to adjudicate Jekyll's lawsuit under Federal Rule of Civil Procedure 4(k)(2), which governs federal claims outside state-court jurisdiction.

The district court erroneously applied a strict "but for" standard, holding that because trademark infringement claims require "use in commerce," liability does not arise from the mere registration or licensing of an infringing mark. But that "but for" reasoning was rejected by the Supreme Court in *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026–27 (2021), where the Court held that it has "never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." Indeed, as the Supreme Court in *Ford Motor* made clear, the issue is not whether the tort is directly caused by a defendant's contacts, but rather whether there is a "strong relationship among the defendant, the forum, and the litigation—the 'essential foundation' of specific jurisdiction." *Id*. at 1028.

Under the appropriate standard, the evidence demonstrates not only that Jekyll's federal trademark and unfair competition claims arise out of or relate to Polygroup Macau Limited's contacts under a Rule 4(k)(2) analysis, but also that Polygroup Macau

Limited "purposefully availed" itself of the privilege of conducting activities within the United States, and that the exercise of personal jurisdiction is in accordance with traditional notions of fair play and substantial justice. *See Del Valle v. Trivago GmbH*, 56 F.4th 1265, 1275 (11th Cir. 2022). The Court should reverse and allow Jekyll to enforce its rights in federal court.

## STATEMENT OF THE CASE

### A. Factual Background

Jekyll was established in 1947 as an instrumentality of the State of Georgia and has operated the Summer Waves Water Park since 1988. Doc. 6 at ¶¶ 7, 18. Since 1990, it has held a federally registered "Summer Waves" trademark, and such trademark is now incontestable. Doc. 6 at ¶¶ 26, 56. Since 2001 it has owned and operated summerwaves.com, an online store that makes "Summer Waves" branded products available nationally. Doc. 6 at ¶ 24.

Polygroup Macau Limited, a member of the Polygroup family of companies, is an intellectual property holding company. Doc. 68 at 3. It does not have any officers, employees, managers, physical offices, or day-to-day operations anywhere. Doc. 51-18 at 64–69, *see also* Doc. 68 at 3–4.

Polygroup Macau Limited does not formally license its intellectual property, including its "Summer Waves" marks. Doc. 51-4 at 29–30; Doc. 51-18 at 126–27, 152. Instead, it holds intellectual property and authorizes three other Polygroup member companies, Polygroup Services, N.A, Polygroup Trading, and Polygroup Limited (Macao Commercial Offshore), to use such intellectual property in what amounts to royalty-free, perpetual licenses. Doc. 51-3 at 25; Doc. 51-18 at 152; Doc. 25-1 at ¶ 7.

Polygroup Macau Limited makes wide use of United States Courts, the United States Patent and Trademark Office, and the United States Patent Trial and Appeal Board. Doc. 68 at 38, Doc. 51-3 at 18–22. It holds numerous trademark registrations and issued patents and has both filed and defended infringement and invalidity actions in the district courts and filed and defended invalidity actions before the Patent Trial and Appeal Board. *See* Doc. 68 at 38, Doc. 51-3 at 18–22; *see also* Doc. 51-6 through Doc. 51-15, inclusive. It has been a party dozens of times, including at least four times as the plaintiff in an infringement action.[1]  Doc. 51-3 at 18–22, Doc. 51-6 through Doc. 51-9, inclusive.

---

[1] As the district court noted "Jekyll identified at least 34 actions in the United States courts or tribunals in which [Polygroup Macau Limited] is or was a party." Doc. 68 at 6.

In 2013 and 2014, Polygroup Macau Limited regularly entered into licensing agreements for its intellectual property, including with United States entities such as Home Depot. *See* Doc. 51-22 through Doc. 51-25, inclusive, *see also* Doc. 68 at 36. All these licensing agreements contain United States choice of law and venue provisions, three specifying venue in Georgia, and one specifying venue in Virginia. Doc. 51-22 through Doc. 51-25, inclusive; *see also*, Doc. 68 at 36. Polygroup Macau Limited also included choice of law provisions in its intellectual property assignments, selecting New York and Virgina. *See* Doc. 51-20, 51-21.

Polygroup Services, N.A., is a Delaware company and another Polygroup member company. Doc. 68 at 5, Doc. 51-47. It has extensive American operations, including an office in Smyrna Georgia, a distribution facility in El Paso, Texas, and a marketing employee in California. Doc. 51-18 at 19–20, 56; Doc. 22 at 6.

Polygroup Services, N.A., imports and markets product throughout the United States, including items bearing "Summer Waves" marks. Doc. 68 at 6; Doc. 51-18 at 124–25, Doc. 51-3 at 8–9. It owns and operates the Polygroup website, which includes a toll-free number for its United States customers, and provides quality control and customer service for products bearing the

"Summer Waves" marks in the United States. Doc. 51-3 at 24; Doc. 25-1 at 2; Doc. 51-18 at 53, Doc. 21 at 5. Polygroup Services, N.A. offers "Summer Waves" products on its website and ships products throughout the United States from its El Paso, Texas, distribution center. Doc. 22 at 6; Doc. 23 at 3.

Polygroup Macau Limited primarily conducts business through other entities. Doc. 51-18 at 88. In the United States, such business is conducted through the employees of Polygroup Services, N.A. Doc. 51-18 at 81. For example, Eric Wong, an employee of Polygroup Services, N.A., signed a 2017 assignment contract on behalf of Polygroup Macau Limited listing himself as the "SVP, Head of North American Operations." Doc. 51-18 at 215–16, Doc. 51-21. Similarly, Eric Szweda, the 30(b)(6) deponent for Polygroup Macau Limited and the individual who reached out to Jekyll to inquire about purchasing the summerwaves.com domain name, is also an employee of Polygroup Services, N.A. Doc. 51-18 at 2, 49.[2]

In 2015 and 2016, Polygroup Macau Limited registered three "Summer Waves" marks with the United States Patent and

_____

[2] Mr. Szweda testified that he was acting as an employee of Polygroup Services, N.A. when he reached out to Jekyll regarding purchasing the domain name. Doc. 51-18 at 49–50. The Court did not accept this testimony. Doc. 68 at 6.

Trademark Office. Doc. 6 at ¶ 35. These marks are nearly identical to Jekyll's "Summer Waves" mark. Doc. 6 at ¶ 59.

## B. Proceedings Below

Jekyll filed suit in early 2021 in the Southern District of Georgia to protect its trademarks. Doc. 1, Doc. 6. The amended complaint asserts four claims against Polygroup Macau Limited: Count I, federal trademark infringement under 15 U.S.C. § 1114; Count II, federal unfair competition under 15 U.S.C. § 1125(a); Count III, common law trademark infringement and unfair competition, and Count IV, cancellation of trademark registrations under 15 U.S.C. § 1119 on the grounds of fraud. *Id.*

After permitting jurisdictional discovery, but without holding an evidentiary hearing, the district court dismissed Jekyll's lawsuit on the grounds that it lacked personal jurisdiction over Polygroup Macau Limited. Doc. 68. The court analyzed personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), which governs federal claims outside of state-court jurisdiction. That rule requires that (1) the claim arises under federal law; (2) the defendant is "not subject to jurisdiction in any state's courts of general jurisdiction"; and (3) "exercis[ing] … jurisdiction [is] consistent with the Constitution and laws of the United States." *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1216 (11th

Cir. 2009). The court held that it could not exercise jurisdiction over the state common law claim (Count III) because Rule 4(k)(2) does not apply to state-law claims. Doc. 68 at 23. It further held that it could not exercise jurisdiction over the 15 U.S.C. § 1119, cancellation of trademark claim (Count IV), because that count could proceed in another court of general jurisdiction, supposedly the federal district court for the Eastern District of Virginia. Doc. 68 at 24–5. The district court further concluded that exercising personal jurisdiction over Jekyll's infringement and unfair competition claims (Counts I and II) would not satisfy due process because they did not "arise out of or relate to" Polygroup Macau Limited's contacts with the United States. Doc. 68 at 26–35. On this point, the district court held that Polygroup Macau Limited's contacts were not the "but for" cause of the injuries that Jekyll has alleged. Doc. 68 at 29–35.

### C.  Standard of Review

This Court reviews *de novo* a district court's dismissal for lack of personal jurisdiction. *Don't Look Media LLC v. Fly Victor Ltd.,* 999 F.3d 1284, 1292 (11th Cir. 2021). In doing so, this Court must accept the allegations in Jekyll's complaint as true and draw all reasonable inferences from the evidence in Jekyll's favor. *Id.*

# SUMMARY OF ARGUMENT

The district court erred in holding that it did not have specific personal jurisdiction over Polygroup Macau Limited to decide Jekyll's federal trademark infringement and unfair competition claims under Federal Rule of Civil Procedure 4(k)(2). The district court further erred when it determined that Rule 4(k)(2) did not apply to Jekyll's cancellation claims because they could proceed in another state's court of general jurisdiction. The district court's order should be reversed.

**I**. Jekyll's claims for trademark infringement and unfair competition (Counts I and II) satisfy the requirements of personal jurisdiction. When seeking to assert specific personal jurisdiction, a plaintiff must establish that "(1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle*, 56 F.4th at 1275. All are satisfied here, where the United States as a whole is "the forum state" for purposes of Rule 4(k)(2).

To start, Jekyll's claims arise out of or relate to Polygroup Macau Limited's contacts with the United States. The district

court held that Jekyll's trademark infringement and unfair cancellation claims did not "arise out of or relate to" Polygroup Macau Limited's contacts with the United States because the contacts identified by Jekyll, including Polygroup Macau Limited's registration of the infringing mark and its decision to give its related companies what amounts to a perpetual, royalty-free permission to use such marks in commerce in the United States are not "but for" causes of Jekyll's trademark infringement and unfair competition claims. Doc. 68 at 29–35. But the district court's reasoning in this regard was expressly rejected by the Supreme Court in *Ford Motor*, which held that strict causation is not required to satisfy the "arising out of or related to" prong. *Ford Motor*, 141 S. Ct. at 1026–27. When evaluated under the correct standard, that is, whether there is a "strong relationship among the defendant, the forum, and the litigation," *id.*, Polygroup Macau Limited's contacts are sufficient to satisfy the "arising out of or related to" prong of specific jurisdiction.

Next, the evidence before the district court was sufficient to demonstrate that Polygroup Macau Limited purposefully availed itself in the United States under either the "effects test" or the "minimum contacts" test. *Del Valle,* 56 F.4th at 1275. The effects test is satisfied as Polygroup Macau Limited engaged in an

intentional tort—trademark infringement—aimed at the United States by granting permission to its related company to use this infringing trademark in the United States, in circumstances where Polygroup Macau Limited should have anticipated that such actions would harm Jekyll, an entity in the United States. The minimum contacts test is also satisfied because Polygroup Macau Limited has substantial contacts with the United States. It holds multiple issued patents and trademark registrations, including the infringing trademark in this case, and has repeatedly taken advantage of the United States courts and administrative tribunals to defend those intellectual property rights. It has further made significant efforts to create a market in the United States by providing its related companies unfettered permission to use its marks to create such market, and by directly attempting to create such market by reaching out to Jekyll in an effort to purchase its summerwaves.com domain name.

Finally, the exercise of jurisdiction over Polygroup Macau Limited comports with traditional notions of fair play and substantial justice. Polygroup Macau Limited has no difficulty litigating in the United States courts, and, in fact, has often chosen federal courts for litigation. Further, the United States has a significant interest in ensuring that its laws are enforced, and

Jekyll has an interest in having its claims litigated in an effective forum.

**II**. The district court also erred when it determined that Rule 4(k)(2) did not apply to Jekyll's cancellation claims. The district court held that Polygroup Macau Limited had identified another court, the Eastern District of Virginia, in which such claims could proceed, such that Rule 4(k)(2) would not apply. But Polygroup Macau Limited did not consent to another *state's* court of general jurisdiction. Rather, it consented to jurisdiction before the Trademark Trial and Appeal Board. Further, even if it had consented to jurisdiction in the state of Virginia for Jekyll's cancellation claim, such consent would be ineffective because the cancellation claim cannot proceed alone under 15 U.S.C. § 1119.

**III.** Finally, if the court has jurisdiction over any of Jekyll's claims, then all four of its claims should proceed, since a court with personal jurisdiction over one claim has jurisdiction over all the claims that arise out of the same jurisdiction-generating event. So that not only means the state-law claim should proceed as well, it also means that if the Court is convinced as to any of the three federal claims, it should reverse as to all of them.

# ARGUMENT

## I. The district court had specific personal jurisdiction over Jekyll's federal trademark infringement and unfair competition claims.

Federal district courts have personal jurisdiction over defendants who are "subject to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed. R. Civ. P. 4(k)(1). But, when federal law is involved, defendants outside *any* state court's jurisdiction do not have a free pass. Rule 4(k)(2) makes them subject to federal jurisdiction when: (1) the claim arises under federal law; (2) they are "not subject to jurisdiction in any state's courts of general jurisdiction"; and (3) "exercising jurisdiction is consistent with the United States Constitution and laws." *Oldfield,* 558 F.3d at 1218 n.23.

Here, it is undisputed that the federal trademark infringement and unfair competition claims arise under federal law. Likewise, Polygroup Macau Limited argued, the district Court accepted, and Jekyll does not appeal the determination that Polygroup Macau Limited is not subject to jurisdiction in any state's court of general jurisdiction for these claims. Doc. 68 at 25–26. So the only question is whether exercising jurisdiction over Polygroup Macau Limited for these claims is "consistent with the United States Constitution and its laws." Fed. R. Civ. P. 4(k)(2).

Given the entity's extensive contacts with United States and that Jekyll's claims arise out of those contacts, jurisdiction is proper and the Court should reverse as to Jekyll's federal trademark infringement and unfair competition claims.

## A. Exercising jurisdiction over Polygroup Macau Limited is consistent with the United States Constitution and laws.

"[D]ue process under the Fourteenth Amendment protects a party from being subject to the binding judgment of a forum with which it has established no meaningful, contacts, ties or relations."[3] *Del Valle*, 56 F.4th at 1274 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). To establish personal jurisdiction, there are two routes: general jurisdiction and specific jurisdiction. *See Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014). General jurisdiction means that a person or entity's contacts are so pervasive that a court has jurisdiction over *any* claim filed against the person or entity. *Id.* Specific jurisdiction, at issue in this appeal, applies where the claim "arises out of or relates to"

---

[3] Rule 4(k)(2) implicates the Fifth Amendment's due process clause, not the Fourteenth Amendment's. *Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd*, 43 F.4th 1303, 1310 (11th Cir. 2022). But the analyses are the same. *Del Valle,* 56 F.4th at 1275 n.3.

the event that took place in the jurisdiction. *See Ford Motor*, 141 S. Ct. at 1026–27.

To establish specific personal jurisdiction, three things must be true: "(1) the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts with the forum state; (2) the nonresident defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of 'fair play and substantial justice.'" *Del Valle*, 56 F.4th at 1275 (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)). Here, where Rule 4(k)(2) is at issue, the "forum state" is the United States as a whole. *Del Valle,* 56 F.4th at 1275 n.3.

Thus, the question in this case is whether Polygroup Macau Limited has sufficient contacts with the United States such that it has fair warning that it may be subject to suit in a United States court on Jekyll's federal trademark infringement and unfair competition claims. It does.

The district court held otherwise largely because it applied an incorrect standard. The district court itself recognized that Polygroup Macau Limited makes "wide use of the United States courts, the [United States Patent and Trademark Office] and its

forum selection clauses." Doc. 68 at 38. The district court expressly found that Polygroup Macau Limited registered the very trademark which infringes on Jekyll's trademark, and did so using attorneys from Atlanta, Georgia. Doc. 68 at 16. Polygroup Macau Limited then granted permission for the mark to be used by other Polygroup companies for use in commerce in the United States. Doc. 68 at 32. The district court further found that the mark *was* used in commerce because "Summer Waves"-branded products are available both online and at retail outlets in Georgia and throughout the United States. Doc. 68 at 16. The district court also found that Polygroup Macau Limited directed its attorneys to reach out to Jekyll to buy its summerwaves.com domain name. Doc. 68 at 18, 33.

In other words, the district court found that Polygroup Macau Limited had (1) registered the very mark that infringes on Jekyll's mark; (2) licensed the infringing "Summer Waves" marks to related third parties for use of that mark; and (3) knew that its mark impacted Jekyll. Doc. 68 at 32–3.

But, due to a legal error, the district court determined that Jekyll's claims did not "arise out of or relate to" Polygroup Macau Limited's United States contacts. The district court held that such contacts must be, at a minimum, a "but for" cause of the tort, and

that, once the "but for" hurdle has been cleared, the court may then search for a "closer and more substantial causal relationship between the relevant contacts and the alleged tort." Doc. 68 at 20, 29. Applying this "but for" test, the district court concluded that none of Polygroup Macau Limited's contacts with Georgia and the United States "arose out of or were related to Plaintiff's claims." Doc. 68 at 29–30.

The district court's "but for" test is the wrong standard. The Supreme Court has specifically rejected the contention that there is specific jurisdiction only when the defendant's forum conduct directly gave rise to the plaintiff's claims. "[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in—state conduct." *Ford Motor*, 141 S. Ct at 1026–27. This Court has recognized the same point in successive cases. *See SkyHop Techs., Inc v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023); *Del Valle*, 56 F.4th at 1275.

Rather, when considering whether a plaintiff's claims "arise out of or related to" a defendants contacts with a forum, the courts are to focus on the "essential foundation" of specific jurisdiction— that is, whether there is a strong "relationship among the defendant, the forum, and the litigation." *SkyHop*, 58 F.4th at

1229. "The principal way to establish this relationship is through an 'activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (citing *Ford Motor*, 141. S. Ct. at 1025).

The appropriate jurisdictional question, then, is not whether Jekyll's infringement claims were *directly caused* by Polygroup Macau Limited's nationwide contacts, but rather whether there is a *strong relationship* among the defendant (Polygroup Macau Limited), the forum (the United States), and the litigation (Jekyll's infringement claims). That is, has Polygroup Macau Limited engaged in an activity or occurrence that took place in the United States and is therefore subject to United States regulation. *SkyHop*, 58 F.4th at 1229.

With the correct standard applied, the facts establish that this strong relationship exists here for two main reasons. First, Polygroup Macau Limited has filed registrations, registered, and been granted multiple trademarks and patents in the United States, including the very marks that infringe on Jekyll's marks, and has extensively litigated its intellectual property rights, including as a plaintiff in infringement suits. Second, Jekyll's marks would not have been infringed by Polygroup Macau Limited's marks if it had not allowed its related entities

unfettered permission to use such marks in commerce in the United States. Taken together, these contacts are more than sufficient to establish personal jurisdiction over Polygroup Macau Limited.

**1. A strong relationship exists between Jekyll's trademark infringement and unfair competition claims and Polygroup Macau Limited's registering of infringing marks in the United States.**

It is undisputed that Polygroup Macau Limited holds significant trademark registrations and issued patents, including the infringing trademarks at issue in this case. It is also undisputed that such trademark registrations and issued patents confer significant legal rights in the United States. *See* 15 U.S.C. §1051; *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 268 (4th Cir. 2003). Further, it is undisputed that these trademark registrations and issued patents are subject to United States law and procedures. Indeed, Polygroup Macau Limited has acknowledged that its "Summer Waves" marks are subject to a trademark cancelation claim before the Trademark Trial and Appeal Board. *See* Doc. 10 at 11.

Thus, a trademark registration is certainly an "activity or occurrence that takes place in" the United States—and is "subject to the United States regulations." *SkyHop*, 58 F.4th at 1229. It

also demonstrates a desire to create and cultivate a market, like the affirmative steps taken by Ford Motor Company to cultivate a market in Montana and Minnesota. *See Ford Motor,* 141. S. Ct. at 1023. In *Ford Motor,* Ford Motor Company had, through billboards, TV and radio spots urged Montanans and Minnesotans to buy its cars, including the models at issue in that case. *Id.* at 1028. It created and cultivated that market by not only directly selling the models of cars at issue in the case, but also facilitating a network of dealerships who sell, maintain, and repair those vehicles. *Id.* And this activity, the court concluded, was sufficient to establish the strong relationship between the plaintiff's claims, Ford Motor Company, and the forums of Minnesota and Montana. *Id.*

Here, Polygroup Macau Limited has similarly taken steps to create and cultivate a market, in this case for goods that infringe on Jekyll's marks. It has affirmatively registered the infringing marks in this case, not for the purpose merely of holding them, but to gain the significant legal protections given to those marks by United States law. Doc. 6 at 6–7, *see Emergency One*, 332 F.3d at 268. It also facilitated the creation of such market, not only by allowing its related companies unfettered permission to use these marks in commerce, but also by reaching out to Jekyll to buy its

domain name. Doc. 51-3 at 25; Doc. 68 at 33. Further, such efforts have been successful because "Summer Waves"-branded infringing products are available both online and in retail stores in the United States. Doc. 68 at 16, Doc. 22 at 6.

Moreover, Polygroup Macau Limited has demonstrated how valuable this property is to its business by engaging in significant litigation to protect this intellectual property. Doc. 68 at 38; Doc. 51-3 at 19–22; Doc. 51-6 through Doc. 51-15, inclusive. It has been a party to intellectual property litigation dozens of times— *including as a plaintiff in the district courts*. Doc. 68 at 6, Doc. 51-6 through Doc. 51-9, inclusive. Since Polygroup Macau Limited relies on the benefits and protections of United States trademark law when it helps its business, it cannot avoid being held to account when its registered marks infringe on the rights of others. *See Ford Motor*, 141 S. Ct. at 1025 ("Our decision in *International Shoe* founded specific jurisdiction on an idea of reciprocity between a defendant and a State: When (but only when) a company exercises the privilege of conducting activities within a state—thus enjoy[ing] the benefits and protection of [its] laws— the State may hold the company to account for related misconduct" (citing *Int'l Shoe*, 326 U.S. at 319 (alterations in original))).

If anything, Jekyll's infringement action "arises out of and is related to" Polygroup Macau Limited's registration of the "Summer Waves" trademarks in this case based on Polygroup Macau Limited's registration and litigation *alone*. These contacts (which involve *these specific trademarks*) are connected at the hip to the litigation here (a trademark-specific suit). *See Del Valle*, 56 F.4th at 1275 (citing *Ford Motor*, 141 S. Ct. at 1026). But there are other contacts as well, including Polygroup Macau Limited's extension of a royalty-free, perpetual permission for use of the infringing marks.

## 2. A strong relationship exists between Jekyll's trademark infringement and unfair competition claims and Polygroup Macau Limited's unfettered permission to use these marks in commerce in the United States.

The evidence also demonstrates that Polygroup Macau Limited has granted permission to use the infringing "Summer Waves" marks to three other related companies-Polygroup Services N.A., Polygroup Trading, and Polygroup Limited (Macao Commercial Offshore)-for use in commerce. *See* Doc. 68 at 32, Doc. 51-3 at 7–8; 24–25. One of these companies, Polygroup Services, N.A., actively uses this mark in commerce in the United States. Doc. 51-3 at 7–8, 22, Doc. 22 at 6; Doc. 51-18 at 129.

Even if this relationship were a simple licensing arrangement, this type of relationship would, again, be sufficient on its own to establish personal jurisdiction in infringement cases under Rule 4(k)(2). *Cf. Universal Music MGB NA, LLC v. Quantum Music Works, Inc.*, 769 F. App'x 445 (9th Cir. 2019) (licensing of infringing copyright sufficient to establish personal jurisdiction in infringement case pursuant to Rule 4(k)(2)).

But Polygroup Macau Limited's relationship with Polygroup Services N.A. goes far beyond a licensing deal. Although Polygroup Macau Limited's authorization of the use of the "Summer Waves" mark is described as "licensing" in the briefing and the district court's order, Polygroup Macau Limited does not formally license its "Summer Waves" trademarks. Doc. 68 at 3, Doc. 51-3 at 7–8. And Polygroup Macau Limited has affirmatively denied that it has any written license related to its "Summer Waves" marks, instead characterizing its activity as "allowing" the related companies to use the marks. *See* Doc. 51-3 at 7–8; Doc. 51-4 at 29–30; Doc. 51-18 at 91–92, 125–26.

This arrangement proves that Polygroup Macau Limited's contacts are even stronger than a bare licensor. The agreement does not provide any royalties or revenue to Polygroup Macau Limited, as Polygroup Macau Limited is a non-revenue-generating

entity that exclusively passes through profit from its subsidiary to its parent on an irregular basis. Doc. 51-18 at 91–2. The evidence makes clear that even the companies allowed to use this mark do not charge for its use. Doc. 51 at 152.

The structure of intellectual property licenses is important for personal jurisdiction purposes. *See Breckenridge Pharmacy, Inc v. Matabolite Labs, Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006). In *Breckenridge Pharmacy*, for instance, the Federal Circuit required courts to look at the nature of a patent license when determining whether it is sufficient to establish personal jurisdiction. *Id.* Specifically, personal jurisdiction exists when a license agreement is "exclusive" and when it "contemplate[s] a relationship beyond merely royalty or cross-licensing payment, such as granting both parties the right to litigate infringement claims or granting the licensor the right to exercise control over the licensee's marketing and sales activities." *Id.* Other lesser contacts, such as mere attempts to license or multiple non-exclusive licenses are insufficient. *Id.* Even if this reasoning is too formulaic after *Ford Motor*, it remains a useful guide for considering the nature of the license between the parties. *See Trimble Inc. v. PerDiemCo.* 997 F.3d 1147, 1156 (Fed. Cir. 2021) ("In light of *Ford*, just as sales of similar vehicles and the presence of dealerships in a forum can

support personal jurisdiction in the tort context, so too can nonexclusive patent licenses in this case.")

Here, the arrangement between Polygroup Macau Limited and Polygroup Services, N.A., is far more significant than an exclusive license with a mere royalty or cross-licensing payment as discussed in *Breckenridge Pharmacy*. Polygroup Macau Limited only allows three related companies to use its trademarks, and only one, Polygroup Services, N.A., uses those marks in the United States. Doc. 51-3 at 7-8; Doc. 51-18 at 152.

But the relationship goes even further than that. Rather than entering a license for a mere royalty or cross-payment, Polygroup Macau Limited has extended a royalty-free, perpetual permission, which can extend past Polygroup Services, N.A. to its customers. Doc. 51-3 at 7–8, 24–25. It also relies on Polygroup Services, N.A., employees to act on its behalf in the United States, to include, for example, signing intellectual property assignments on its behalf. *See* Doc. 51-18 at 81, 215–16, Doc. 51-21. In holding there was a lack of jurisdiction in this "candidly, [ ] fairly close case," the district court recognized the significant connection between Polygroup Macau Limited's registering and licensing of the infringing marks with Jekyll Island's infringement claims. Doc. 68 at 32–33. But the court then erroneously applied the narrow "but

for" causation analysis rejected by the Supreme Court in *Ford Motor*.

Applying the correct standard, there can be little question that personal jurisdiction exists here. Polygroup Macau Limited registered the infringing marks in the United States, engages in litigation to protect its intellectual property, granted perpetual, royalty-free permission for others to *use the offending marks* (again, in the United States). If that is not *minimum* contacts, it is not clear what would be.

In fact, even applying the *wrong* "but for" standard, there is *still* personal jurisdiction. The infringement at issue literally could not happen "but for" Polygroup Macau Limited's granting of permission to its U.S. corporate cousin to use the "Summer Waves" marks. Without that contact, there would be no infringement and no unfair competition. So although the district court used the wrong standard, it should not even matter. Polygroup Macau Limited's contacts are *both* a but-for cause *and* strongly related to the forum and the litigation.

### B. Polygroup Macau Limited purposefully availed itself of the privilege of conducting activities within the forum of the United States.

To support purposeful availment, the defendant must have had contacts with the forum that were his "own choice and not 'random, isolated, or fortuitous.'" *SkyHop*, 58 F.4th at 1230 (quoting *Ford Motor*, 141 S. Ct. at 1025). Such contacts "must show that the defendant deliberately 'reached out beyond' its home," such as by "entering a contractual relationship centered" in the forum. *Id.*

As explained in *Del Valle*, 56 F.4th at 1275, there are two ways to establish purposeful availment: the effects test and the minimum contacts test. "Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1276. Slightly different, "[t]he minimum contacts test assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1275. As with the first test, the nonresident's

contact with the forum need not give rise to the plaintiff's claim. *Id.*

Polygroup Macau Limited's activities here satisfy both tests.

### 1. Polygroup Macau Limited has purposefully availed itself of the United States under the "effects test".

Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state. *See Del Valle*, 56 F.4th at 1276. "This occurs when the tort: (1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* at 1276 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008)). Further, the "forum state" for the purposes of this test is the United States, pursuant to Rule 4(k)(2). *Herederos De Roberto Gomez Cabrera, LLC,* 43 F.4th at 1310.

The first element, intentionality, is satisfied because it is well established in this circuit that trademark infringement is the type of intentional tortious act that will implicate the effects test. *See Licciardello*, 544 F.3d at 1287; *Louis Vuitton*, 736 F.3d at 1356–57.

Next, Polygroup Macau Limited's trademark infringement and unfair competition torts were plainly "aimed" at the United States. It is undisputed that Polygroup Macau Limited registered the infringing marks in the United States and then granted permission for that infringing mark to be used in commerce in the United States. Further, as the district court found, Polygroup Macau Limited actually knew that its mark impacted Jekyll. This is the type of activity that constitutes "aiming." Indeed, in *Licciardello*, personal jurisdiction was established over a defendant who intentionally took a Florida plaintiff's trademarked name and picture and placed it on a website accessible in Florida. The court held that because the intentional tort of infringement was targeted at a specific individual who resided in Florida, the intentional tort was aimed at the forum state, Florida. *Id.* Similarly here, Polygroup Macau Limited registered, and allowed to be used, a mark that it knew impacted a specific entity in the United States—Jekyll.

Finally, this infringement caused harm that Polygroup Macau Limited knew would be suffered in the United States. It knew where Jekyll was located and "knew specifically that its license impacted [Jekyll] because it sought to buy [Jekyll's] domain name." Doc. 68 at 33. Thus, as the district court stated this is not

a merely negligent use of an infringing mark, but rather was an intentional act directed at Jekyll, an entity located in the United States. This is sufficient for purposeful availment.

### 2. Polygroup Macau Limited has purposefully availed itself of the United States under the "minimum contacts" test.

The minimum contacts test assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Del Valle,* 56 F.4th at 1275. In performing the minimum contacts analysis, the court identifies all contacts between the nonresident defendant and the forum and asks whether, individually or collectively, those contacts satisfy the relevant criteria. *Id.* Further, the nonresident's contact with the forum need not give rise to the plaintiff's claim. *Id.* As with the earlier tests, because the analysis is under Rule 4(k)(2), the relevant forum is the United States as a whole. *Herederos De Roberto Gomez Cabrera,* 43 F.4th at 1310.

As discussed above, Polygroup Macau Limited's contacts with the United States are substantial. Polygroup Macau Limited makes wide use of United States courts and the United States Patent and Trademark office and tribunals. Doc. 68 at 38, Doc. 51-3 at 18–22. Polygroup Macau Limited has participated in dozens of actions as a party and has been sole plaintiff four times. Doc. 68 at 6; Doc. 51-3 at 17-22. It has also entered multiple intellectual property assignments and regularly entered licensing agreements with choice of law and venue provisions based in the United States. *See* Doc. 51-20 through Doc. 51-25, inclusive; Doc. 68 at 36.

Further, as stated above, Polygroup Macau Limited has the additional contact of its perpetual, royalty-free trademark permission granted to Polygroup Services, N.A., as well as its direct contact with Jekyll seeking to purchase its summerwaves.com domain name. Thus, the evidence reflects that Polygroup Macau Limited's contacts with the United States are not "random, isolated, or fortuitous," but rather that Polygroup Macau Limited has taken substantial steps to "reach out beyond its home" and do business in the United States. *See SkyHop,* 58 F.4th at 1230.

Although not all these contacts are related to Jekyll's cause of action, many certainly are. In addition to registering other,

unrelated trademarks, Polygroup Macau Limited has registered the very trademarks at issue in this case. It also has permitted Polygroup Services, N.A. to use those trademarks perpetually and royalty-free.

Turning to the question whether Polygroup Macau Limited's contacts "involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum," these contacts plainly do. *Del Valle*, 56 F.4th at 1276. Polygroup Macau Limited is, by its own definition, an intellectual property holding company, and thus is in the business of holding United States property. It also has engaged in widespread litigation to enforce these rights, and that is in addition to its actions in permitting its related companies to use its trademark. This factor is easily met.

The last factor is whether Polygroup Macau Limited should reasonably anticipate being haled into court in the United States. As the district court stated, Polygroup Macau Limited has taken advantage of the United States' protections by registering its marks, so it could reasonably anticipate being held to account for violating those protections. Doc. 68 at 33. The district court was correct here—Polygroup Macau Limited's substantial contacts,

taken together, easily meet the minimum contacts analysis under Rule 4(k)(2).

### 3. Exercising jurisdiction over Polygroup Macau Limited would comport with traditional notions of fair play and substantial justice.

Once the first two factors are met, the burden shifts to the defendant to make a "compelling case" that personal jurisdiction would not comport with "traditional notions of fair play and substantial justice." *SkyHop,* 58 F.4th at 1231. Under this prong, the court considers (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). Polygroup Macau Limited asserts that it is a foreign company that does not have offices, personnel, or preserve documents in Georgia, and that, if the other due process factors have not been met, this one also is not met. Doc. 10 at 7, Doc. 47 at 10.

Polygroup is wrong. As an initial matter, Polygroup Macau Limited has demonstrated, repeatedly, that there is no significant burden on it to litigate in the United States Courts. Again, it has

both initiated and defended suits in the United States district courts, and in fact, has actively selected United States forums in its contracts. Doc. 68 at 6, Doc. 51-22 through Doc. 51-25. Further, even if it does not have offices, personnel, or preserve documents in Georgia, its subsequent testimony revealed that it does not have offices or personnel *anywhere*. Doc. 51-18 at 65, 69. It also maintains few documents and does not have a document management system of any kind. Doc. 51-18 at 42, 44.

On the other hand, the United States has a significant interest in protecting its trademarks and its citizens from trademark infringement, and Jekyll has an interest in having its case adjudicated in an effective forum. *See Plixer Int'l v. Scrutinizer GmbH*, 905 F.3d 1, 12 (1st Cir. 2018). Accordingly, the exercise of jurisdiction over Polygroup Macau Limited comports with traditional notions of fair play and substantial justice, and this court should find that jurisdiction over Polygroup Macau Limited is proper.

## II. Jurisdiction is also proper regarding Jekyll's trademark cancellation claims.

As stated previously, Rule 4(k)(2) makes a defendant subject to federal jurisdiction when: (1) the claim arises under federal law; (2) they are "not subject to jurisdiction in any state's courts of

general jurisdiction"; and (3) "exercising jurisdiction is consistent with the United States Constitution and laws." *Herederos De Roberto Gomez Cabrera*, 43 F.4th at 1307. The second factor is important because "the law of specific jurisdiction . . . seeks to ensure that states with 'little legitimate interest' in a suit do not encroach on states more affected by the controversy." *Del Valle*, 56 F.4th at 1274 (citing *Ford Motor Co.,* 141 S. Ct. at 1025). Thus, the purpose of Rule 4(k)(2) is to establish jurisdiction in cases "where a defendant is not amenable to the jurisdiction of any state's courts of general jurisdiction" and yet not interfere with any state's individual jurisdiction over the dispute. *See Oldfield*, 558 F.3d at 1218.

When considering whether any state has jurisdiction, "a district court is not required to analyze the laws of all fifty states to ascertain whether any state court of general jurisdiction has jurisdiction over the defendant; rather, [i]f . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Oldfield,* 558 F.3d at 1218n.2 (11th Cir. 2009) (citing *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)). "Thus, a defendant who wants to

preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." *ISI Int'l,* 256 F.3d at 552.

The district court relied upon this reasoning when it held that Rule 4(k)(2) did not apply to Jekyll's cancellation claim (Count IV) "because [Polygroup Macau Limited] had consented to the jurisdiction of the Eastern District of Virginia, the Eastern District of Virginia may exercise personal jurisdiction over [Polygroup Macau Limited] for this [cancellation] claim." Doc. 68 at 24. That was plain error.

As an initial matter, Polygroup Macau Limited did not consent to jurisdiction in any "state court of general jurisdiction" for this claim. Rather, it consented to jurisdiction before the Trademark Trial and Appeal Board, which it then suggested is sufficient to satisfy this requirement because the decisions of such board are appealable to the Eastern District of Virginia. Doc. 10 at 11–12. However, the mere fact that cancellation claims can be brought before an administrative appeal board, with limited jurisdiction and remedies, does not establish that the defendant is "subject to jurisdiction in any state's courts of general jurisdiction" as required by Rule 4(k)(2).

Further, even if Polygroup Macau Limited had "consented to jurisdiction in the Eastern District of Virginia" for its cancellation

claims, such consent would still not be sufficient to satisfy Rule 4(k)(2). District courts are not *state courts of general jurisdiction*, as required by Rule 4(k)(2). And even if Polygroup Macau Limited had consented to personal jurisdiction in the courts of the state of Virginia for the cancellation claims (which it did not), that concession would be ineffective.

The only provision that permits a United States district court to consider a trademark cancellation claim is 15 U.S.C. § 1119, and that provision requires an "instituted and otherwise jurisdictionally supportable action involving a registered mark." *Ditri v. Coldwell Banker Residential Affiliates, Inc.* 954 F.2d 869, 873 (3rd Cir. 1992); *see also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98 (2d Cir. 2011) ("Section 1119 therefore creates a remedy for trademark infringement rather than an independent basis for federal jurisdiction"). Since no one, including the district court, has suggested that Polygroup Macau Limited has consented to jurisdiction in Virginia for Jekyll's trademark infringement and unfair competition claims, and there is no subject-matter jurisdiction for the cancellation claims to proceed alone, Polygroup Macau Limited has certainly not identified "some other state where this suit could proceed." *ISI Int'l*, 256 F.3d at 552.

Accordingly, the district court erred when it held that Rule 4(k)(2) did not apply to Jekyll's cancellation claims.

Turning to the due process analysis in Rule 4(k)(2), there is little question that the cancellation claim satisfies due process. A cancellation claim certainly "arises out of or is related to" the registration of a trademark, Polygroup Macau Limited has purposefully availed itself of the United States by registering such trademark, and litigating such cancellation claim here does not offend traditional notions of fair play and substantial justice. *See Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403 (Fed. Cir. 2009) (finding 4(k)(2) jurisdiction in a legal malpractice case arising from the registration of a patent).

## III. Jekyll's other claims may proceed if Polygroup Macau Limited is subject to personal jurisdiction on any claim

If any of Jekyll's claims is allowed to proceed, then the remainder should as well. That is because a district court has personal jurisdiction over the entire case when all claims arise from the same jurisdiction-generating event. *See SkyHop*, 58 F.4th at 1231, (citing *Cronin v. Wash. Nat'l Ins. Co.,* 980 F.2d 663, 671 n.10 (11th Cir. 1993)). "After all, the point of the personal-jurisdiction inquiry is to ensure that the defendants had at least minimum contacts with the forum state so that hauling them into

court in the forum state 'does not offend 'traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316). Thus, as explained in *SkyHop*, "once it is established that [a] defendant[] had enough contacts for it to be fair to haul them into court in the forum state on one claim, the personal-jurisdiction inquiry has served the bulk of its purpose." *Id.* In this case, Jekyll's common law trademark and unfair competition claims arise out of the same jurisdiction-generating event as the federal trademark infringement and unfair competition claims. Accordingly, the district court had personal jurisdiction over them.

Further, although trademark cancellation claims have a different factual basis than trademark infringement claims, Congress has explicitly recognized the significant connections between the actions by enacting 15 U.S.C. § 1119. *See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp*, 257 F.2d 485, 491 (3d Cir. 1958) (the purpose of this provision is to "permit all questions in respect to a registered trademark [to be] determined in one proceeding"). So if any of these claims can move forward, they all can.

# CONCLUSION

For the reasons set out above, this Court should reverse the judgment of the district court.

Respectfully submitted.

/s/ *Frances C. Mulderig*

Katrina M. Quicker
  *Special Asst. Atty. General*

Christopher M. Carr
  *Attorney General of Georgia*

Logan Winkles
  *Deputy Attorney General*

Amy Patterson
  *Senior Asst. Attorney General*

Frances Mulderig
  *Assistant Attorney General*

Quicker Law, LLC
900 Circle 75 Parkway,
Suite 100
Atlanta, Georgia 30339
(678)-750-0450
kquicker@quickerlaw.com

Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3592
fmulderig@law.ga.gov

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type—volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 9555 words as counted by the word—processing system used to prepare the document.

/s/ *Frances C. Mulderig*
Frances C. Mulderig

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2023, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

/s/ *Frances C. Mulderig*
Frances C. Mulderig