UNITED STATES CIRCUIT COURT OF APPEALS
ELEVENTH CIRCUIT

APPEAL NO. 23-11415

---

JEKYLL ISLAND-STATE PARK AUTHORITY,

Plaintiff-Appellant,

v.

POLYGROUP MACAU LIMITED,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Georgia
(Case No. 2:21-CV-008)

---

**BRIEF OF APPELLEE**

---

R. Brian Tanner
GRIFFIN DURHAM TANNER & CLARKSON, LLC
104 West State Street, Suite 200
Savannah, Georgia 31401
Telephone: (912) 867-9140
btanner@griffindurham.com

Counsel for Appellee

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for appellee Polygroup Macau Limited certifies that the Certificate of Interested Persons included within Appellant Jekyll Island-State Park Authority's brief is correct and complete.

Counsel for appellee Polygroup Macau Limited additionally certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Polygroup Macau Limited does not believe that oral argument is necessary or desirable to resolve this appeal.  This appeal can and should be decided efficiently on the briefs.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................ C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ...................................i

TABLE OF CONTENTS ..........................................................................ii

TABLE OF AUTHORITIES ................................................................... v

STATEMENT OF JURISDICTION .......................................................viii

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF THE CASE ................................................................ 2

    I.     Course of Proceedings ............................................................ 2

    II.    Statement of Facts ................................................................ 3

        A. Jekyll and its SUMMER WAVES Trademark .................. 3

        B. PML and its SUMMER WAVES Trademarks ................... 4

        C. The Other Polygroup Companies ...................................... 6

        D. Contacts with the United States ....................................... 7

            1. Trademark Registration and Patent Prosecution ......... 7

            2. Other Litigation ............................................................. 8

            3. Permitted Use of SUMMER WAVES Trademarks ....... 9

            4. Licensing of Other Trademarks and Patents .............. 10

     5. Sporadic Business in the United States "Conducted Through" Other Polygroup Companies ....................... 11

     6. Sales from the "Polygroup" Website ............................ 13

  III.   Standard of Review ............................................................. 14

SUMMARY OF THE ARGUMENT ........................................................ 14

ARGUMENT ...................................................................................... 17

  I.   The Court Should Not Review Error Invited by Jekyll ........ 17

  II.   Specific Personal Jurisdiction Does Not Exist Over PML on Jekyll's Claims ...................................................................... 22

     A. Due Process Requirements Under Rule 4(k)(2) .............. 22

     B. Jekyll's Claims Did Not Arise Out Of And Are Not Sufficiently Related To PML's Very Limited Contacts with the United States .................................................. 25

       1. Registration of Trademarks and Patents .................... 26

       2. Prior Lawsuits ............................................................. 28

       3. Licensing/Permitting Arrangements with Other Polygroup Companies ................................................. 30

       4. Actions of Separate Polygroup Companies .................. 37

       5. Attempt to Purchase Domain Name ............................ 39

C. PML Has Not Purposefully Availed Itself of the United States Forum .................................................................... 42

    1. The "Effects Test" ......................................................... 43

    2. The "Minimum Contacts" Test ..................................... 45

D. Fair Play and Substantial Justice ..................................... 47

III.   Jurisdiction Does Not Exist Over Jekyll's Trademark Cancellation Claim ................................................................. 48

CONCLUSION .......................................................................... 50

CERTIFICATE OF COMPLIANCE ......................................... 52

CERTIFICATE OF SERVICE ................................................. 53

# TABLE OF AUTHORITIES

## CASES

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564 (1985) .............. 41

*Associated Trasnp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070 (11th Cir. 1999)....................................... 22

*Astor Chocolate Corp. v. Elite Gold Ltd.,* 510 F. Supp. 3d 108 (S.D.N.Y 2000) ....................................................................... 27, 31, 47

*Breckinridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.,* 444 F.3d 1356 (Fred. Cir. 2006) ........................................ 34, 35, 36

*Burger King Corp v. Rudzewicz*, 471 U.S. 462 (1982) ........................... 40

*Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000) ....................................................................... 37

*Davis v. LG Chem, Ltd*, 849 F. App'x 855................................................ 22

*Del Valle v. Trivago GMBH,* 56 F.4th 1265 (11th Cir. 2022) ........... 43, 45

*Diece-Lisa Indus., Inc. v. Disney Enterp., Inc.,* 943 F. 3d 239 (5th Cir. 2019) ....................................................................... 31

*Ditri v. Coldwell Banker Residential Affiliates, Inc.,* 954 F.2d 869 (3d Cir. 1992) ....................................................................... 50

*Don't Look Media LLC v. Fly Victor Limited*, 999 F.3d 1284 (11th Cir. 2021) ....................................................................... 14

*Eco Pro Painting, LLC v. Sherwin-Williams, Co.*, 807 F. Supp. 2d 732 (N.D. Ill. 2011)....................................................................... 32

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.,* 332 F.3d 264 (4th Cir. 2003) ....................................................................... 27

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) .................................................................................. *passim*

*Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010) ..................................... 23

*Hargrave v. Fibreboard Corp.,* 710 F.2d 1154 (5th Cir. 1983) .............. 38

*In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233 (11th Cir. 2006) ...................................................................................... 22

*In re Raidford*, 695 F.2d 521 (11th Cir. 1983) ...................................... 30

*Int'l Shoe Co. v. State of Wash*, 326 U.S. 310 (1945) .............................. 23

*Johnson v. TheHuffingtonPost.com, Inc.,* 21 F.4th 314 (5th Cir. 2021). 30

*Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008)....................... 44

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) ...................................................................................... 44

*Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249 (11th Cir. 2001)............... 50

*Meier v. Sun Int'l Hotels*, 288 F.3d 1264 (11th Cir. 2002) .......... 24, 37, 38

*Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283 (Fed. Cir. 2012)...................... 23

*Nike, Inc. v. Already, LLC,* 663 F.3d 89 (2d Cir. 2011) ................... 49, 50

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009) ................................................................................ *passim*

*Quick Technologies, Inc. v. Sage Group PLC,* 313 F.3d 338 (5th Cir. 2002) ...................................................................................................... 28

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355 (Fed. Cir. 1998) ................................................................................................ 31

*Rhodes v. Unisys Corp.,* 170 F. App'x 681 (11th Cir. 2006) ................... 24

*Saudi v. Acomarit Mar. Servs., S.A.,* 245 F. Supp. 2d (E.D. Pa. 2003) .. 30

*SkyHop Technologies, Inc. v. Narra*, 58 F.4th 1211
(11th Cir. 2023) ............................................................... *passim*

*Smith v. Home Depot USA, Inc.*, 294 F. App'x 186 (6th Cir. 2008) ........ 47

*Special Industries, Inc. v. Zamil Group Holding, Co.*, 578 F. App'x 325
(5th Cir. 2014) ..................................................................... 38

*United States v. Bird*, 79 F.4th 1344 (11th Cir. 2023) ........................... 17

*Universal Music MGB NA, LLC v. Quantum Music Works, Inc.,* 769 F.
App'x 445 (9th Cir. 2019) ................................................ 33, 34

## STATUTES

15 U.S.C. § 1114 ..................................................................... 27

15 U.S.C. § 1119 ............................................................... 16, 50

15 U.S.C. § 1125 ..................................................................... 28

28 U.S.C. § 1291 .................................................................... viii

28 U.S.C. § 1331 .................................................................... viii

## RULES

Fed. R. Civ. P. 4(k)(2) ................................................ *passim*

# STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction because Appellant Jekyll Island-State Park Authority ("Jekyll") asserted claims arising under the laws of the United States. *See* 28 U.S.C. § 1331. This Court has appellate jurisdiction to review the final order entered by the district court. *See* 28 U.S.C. § 1291. Notice of appeal was timely filed by Jekyll on April 25, 2023 (Doc. 71),[1] within thirty days of final judgment on March 27, 2023 (Doc. 69).

---

[1] Citations in this brief are to the district court docket entries in the form "Doc. ____-Pg. _____" or "Doc. ___, at ____." If the document cited is a deposition transcript, the citation is in the form "Doc. ___, at ___:___," tracking the line and page number of that transcript.

## STATEMENT OF THE ISSUES

1.     Can this Court review the alleged error by the district court in applying a "but for" standard to determine the relatedness of Polygroup Macau Limited's ("PML's") contacts with the relevant forum for purposes of personal jurisdiction, when Jekyll initially invited that error through their own briefing and argument?

2.     Did the district court correctly conclude that specific personal jurisdiction did not exist over PML under Fed. R. Civ. P. 4(k)(2) because (a) PML's limited contacts with the United States did not arise out of and are insufficiently related to Jekyll's claims, (b) PML has not purposefully availed itself of the United States forum, and (c) assertion of personal jurisdiction would not comport with traditional notions of fair play and substantial justice?

3.     Did the district court correctly conclude that Fed. R. Civ. P. 4(k)(2) does not provide independent jurisdiction for Jekyll's trademark cancellation claim?

## STATEMENT OF THE CASE

## I.     Course of Proceedings.

Jekyll filed a complaint against PML in the United States District Court for the Southern District of Georgia in January 2021. (Doc. 1.) In that complaint, as later amended, Jekyll alleged that PML infringed Jekyll's federally-registered SUMMER WAVES trademark and committed unfair competition in violation of federal statutes and common law. (Doc. 6-Pgs. 10-13.) Jekyll also alleged that PML's own federally-registered SUMMER WAVES trademarks should be cancelled for fraud. (*Id*. at 13-15.)

PML, a corporate entity organized and headquartered in the British Virgin Islands, moved to dismiss Jekyll's complaint for lack of personal jurisdiction. (Doc. 10.) After full briefing (Docs. 10, 17, 25, 35, 36), and oral argument (Docs. 34, 70), the district court denied PML's motion without prejudice and ordered limited jurisdictional discovery. (Doc. 37-Pg. 4.) After completion of that discovery, PML renewed its motion to dismiss. (Doc. 47.) The parties again briefed the relevant issues. (Docs. 47, 51, 52, 65.)

In a thorough order, the district court concluded that it lacked personal jurisdiction over PML and, therefore, dismissed Jekyll's claims against PML without prejudice. (Doc. 68-Pg. 52.) After entry of judgment (Doc. 69), Jekyll filed a timely notice of appeal (Doc. 71). This appeal ensued.

## II. Statement of Facts.

### A. Jekyll and its SUMMER WAVES Trademark.

Jekyll is a public authority that, *inter alia*, operates the Summer Waves water park on Jekyll Island, Georgia. (Doc. 1-Pgs. 2, 4.) That park is open about four months out of the year, from mid-May to early September. (*See* "Summer Waves Water Park*,*" www.jekyllisland.com/activities/summer-waves-water-park/#schedule, visited Oct. 25, 2023). In 1990, Jekyll obtained a federal trademark registration for SUMMER WAVES for use in connection with International Class 41,[2] for

---

[2] Trademarks are classified by the United States Patent and Trademark Office under the Nice Classification, an internationally-used set of 45 classes that attempts to divide goods and services into like groups. Jekyll did not register its mark in connection with any class of goods, only for service class 41 – "entertainment [or] recreational services."

"entertainment services, namely, providing recreational services at an amusement park featuring water rides at a public park." (Doc. 1-Pg. 5.)

B.  <u>PML and its SUMMER WAVES Trademarks.</u>

PML is a corporate entity incorporated and headquartered in the British Virgin Islands. (Doc. 10-1, at 2.) PML is one member of a group of "Polygroup" corporate entities that are involved in various aspects of the business of manufacturing consumer goods, including artificial Christmas trees, above-ground pools, and summer inflatable toys. (*Id*.) PML, in particular, is "an intellectual property holding company that registers and holds intellectual property to be used by other companies." (Doc. 25-1, at 2.)

In 2016, PML obtained three federal trademark registrations – SUMMER WAVES 3D, SUMMER WAVES ELITE, and SUMMER WAVES – for use in connection with International Class 28, a class of mainly toys and novelty items that includes "[i]nflatable pools . . .; inflatable swimming pool toys; . . . [and] inflatable inner tubes for aquatic recreational use," among other products. (Docs. 6-2, 6-3, 6-4.)

As an intellectual property holding company, PML does not itself use the SUMMER WAVES marks in commerce, not in the United States

and not anywhere else in the world. (Doc. 10-1, at 2.) It has never marketed, advertised, imported, sold, or distributed *any* goods, much less Summer Waves-branded goods, in the United States. (*Id.*) PML "does not engage in any customer sales activity any place in the world." (Doc. 47-1, at 113:25-114:1.) It "isn't involved in any buying or selling activities any place in the world." (*Id.* at 113:12-14.)

PML has no employees and no staff (Doc. 47-1, at 65:25-66:1, 69:19) and no operating office (*id.* at 69:20-22). It is not set up to generate revenue or earn income. (*Id.* at 84:11-15.) It does not generate income or earn revenue from sales in the United States of products bearing the SUMMER WAVES marks. (Doc. 51-3, at 26.) PML does not own, lease, or operate any property or facilities in the United States, nor has it ever done so. (Doc. 10-1, at 3; Doc. 51-3, at 10.) It does not import goods into the United States and does not hold any import license for the United States. (Doc. 47-1, at 109:4-7.) PML has never paid taxes to any state or federal entity in the United States (*id.* at 108:23-25) and is not registered to do business in any jurisdiction within the United States (*id.* at 112:7-9). It "has no footprint in the United States." (*Id.* at 145:11-12.)

C.    The Other Polygroup Companies.

Other separate companies within the Polygroup group of corporate entities are involved in the process of marketing, importing, and selling products bearing the "Summer Waves" trademarks for the United States market.  (Doc. 47-1, at 109:20-110:2, 110:10-19, 115:17-117:3, 124:17-21.)  PML permits use of the SUMMER WAVES marks by those entities and the customers of those entities (primarily, retailers).  (Doc. 51-3, at 7-8.)  Separate Polygroup entities market and sell Summer Waves-branded products to their retailer customers, and those retailer customers import those products into the United States for sale in the retailers' stores or through their websites.[3]  (*Id.* at 8-9.)

Polygroup Services N.A., Inc.,[4] for instance, imports products to the United States bearing the Summer Waves trademark.  (Doc. 47-1, at 124:18-21.)  It also operates Polygroup websites within the United States through which it markets and sells SUMMER WAVES-branded products (Doc. 25-1, at 2; Doc. 47-1, at 116:23-117:3), and it provides quality

---

[3]    These retailer customers include Amazon, Big Lots, Home Depot, Toys R Us, and Wal-Mart.  (Doc. 17-3, at 9.)

[4]    Polygroup Services N.A., Inc., a Delaware company, changed its name to Polygroup North America, Inc. in 2023.

control and customer service support for products bearing the SUMMER WAVES mark in the United States. (Doc. 51-3, at 24.) Polygroup Services N.A. employees are involved in directly marketing and accepting orders for Summer Waves products in the United States. (Doc. 47-1, at 148:16-149:11.)

Polygroup Limited (Macao Commercial Offshore), a subsidiary of PML (Doc. 47-2, at 6), sells Summer Waves-branded products outside the United States, typically in Asia, to global retailers. (Doc. 47-1, at 109:20-110:2.) Those retailers take delivery of the product in Asia and then import it into the market in which it will be sold to consumers, be it "Brazil or the United States or EU" or elsewhere. (*Id.*)

D.    Contacts with the United States.

In its brief, Jekyll points to certain purported contacts between PML and the United States in support of its jurisdictional arguments. Additional or clarifying facts relevant to those purported contacts are set out here.

1.    Trademark Registration and Patent Prosecution.

In addition to the SUMMER WAVES marks discussed above, PML has registered a number of additional trademarks and obtained a number

of patents in the United States over the course of its corporate existence. (*See, e.g.,* Doc. 21-3, at 85.) Jekyll's claims here, however, involve only the SUMMER WAVES marks, not any of these other trademarks or patents.

2. <u>Other Litigation.</u>

In connection with its other trademarks and patents, PML has been a party to other legal proceedings in the United States. (Doc. 21-4, at 103-05; Doc. 51-3, at 19-22.) None of those cases had anything to do with the SUMMER WAVES trademarks or with above-ground pools, inflatable pool toys, or any other products on which PML's SUMMER WAVES marks have been used. (*Id.*) Nearly all of those other cases involved a running dispute with one particular company (Willis Electric Co., Ltd.) over patents held by PML relating to pre-lit artificial Christmas trees. (*E.g.*, Doc. 21-4, at 107-54, 156-87; Doc. 51-3, at 19-22.)

PML has never sued anyone in the United States to enforce its rights in the SUMMER WAVES trademarks. Other than the current lawsuit, the only lawsuits involving the SUMMER WAVES trademarks

and any Polygroup entity were brought by a pro se litigant and dismissed on grounds including lack of jurisdiction.[5]

### 3. Permitted Use of SUMMER WAVES Trademarks.

As above discussed, PML is an intellectual property holding company. As such, it permits other Polygroup entities, including "Polygroup Services N.A. Inc., Polygroup Trading, and Polygroup Limited (Macao Commercial Offshore), and/or their customers, which are retailers, to use, from time to time, its federally registered United States SUMMER WAVES marks." (Doc. 51-3, at 7-8.) These other Polygroup entities "are each separate entities with separate operations." (Doc. 10-1, at 3.) As the district court noted, "while PML licensed use of the mark, [Jekyll] has not alleged that PML exercised any continuing control or obligation over the license, that the licenses were exclusive, or that PML retained control over its licensee's sales or marketing." (Doc. 68-Pg. 34.)

---

[5] The record contains a *pro se* complaint filed in the United States District Court for the Eastern District of Texas in 2019 by this *pro se* "inventor" claiming that he "invented" the "brand concept 'Summer Waves' . . . and corresponding product inventions." (Doc. 21-4, Ex. AO.) PML was not named as a party to that lawsuit. (*Id*.) That particular lawsuit was dismissed without prejudice before any defendant was required to answer.

## 4. Licensing of Other Trademarks and Patents.

Jekyll contends that that "Polygroup Macau Limited regularly entered into licensing agreements for its [other] intellectual property, including with United States entities such as Home Depot" (Br. at 7) and that those agreements had "choice of law and venue provisions based in the United States." (*Id.* at 33.) The record evidence is that PML entered into four such licensing agreements. (*Id.* at 7, citing Docs. 51-22, 52-23, 51-24, and 51-25.) None of those licensing agreements involved the "Summer Waves" marks at all:

- Doc. 51-22: License Agreement between PML and Santa's Best for "QUICKSET" trademark.

- Doc. 51-23: License Agreement between PML and Willis Electric Co. for "QUICKSET" trademark.

- Doc. 51-24: License Agreement between PML and UCP International Co. for "Licensed Patent Products" involving "Light String System" or "Smart Light."

- Doc. 51-25: License Agreement between PML and The Home Depot U.S.A., for "QUICKSET" trademark.

Jekyll also points to "assignments" of other intellectual property rights by PML (Br. at 7), but, again, those assignments (between PML and General Foam Plastics Corporation) relate to other trademarks and

patents and do not relate to the "Summer Waves" marks at issue here. (Doc. 51-20; Doc. 51-21.)

     5.    <u>Sporadic Business in the United States "Conducted Through" Other Polygroup Companies.</u>

Jekyll contends that "[PML] primarily conducts business through other entities." (Br. at 8.) For this idea, Jekyll cites a single page of the deposition transcript of Eric Szweda, an in-house attorney for the Polygroup companies (Br. at 8, citing "Doc. 51-18 at 88"). That page fails entirely to support Jekyll's characterization. Mr. Szweda testified there that, in the context of "patent application filings," PML "delegated . . . interaction with outside counsel to other entities . . . in the group to handle and then, in turn, also pay for those services." (Doc. 51-18, at 88:14-18.) That reference does not support any conclusion that PML "primarily conducts business through other entities," and it does not reference business related to the Summer Waves trademarks, or indeed any trademark.

Jekyll states specifically that "in the United States, [PML's] business is conducted through the employees of Polygroup Services, N.A." (Br. at 8.) Again, it points only to sporadic examples in the record, and those examples do not support any such broad characterization. Jekyll

cites an assignment contract signed on behalf of PML by "Eric Wong" as "SVP, Head of North American Operations." (Br. at 8, citing "Doc. 51-21.") That contract – an assignment to General Foam Plastics Corporation – nowhere mentions the "Summer Waves" marks. (Doc. 51-21.) Eric Wong is the Senior Vice President and Head of North American Operations for Polygroup Services N.A. (Doc. 51-18, at 215:16-216:3.) Mr. Wong was given authority by the directors of PML to enter into that particular contract on behalf of PML. (*Id.* at 216:7-19.)

The other example given by Jekyll of "PML primarily conduct[ing] business in the United States through the employees of Polygroup Services, N.A." is contact between Eric Szweda, an in-house attorney for the Polygroup family of companies, and Jekyll in January 2021. (Br. at 8.) Mr. Szweda called Jekyll's executive director then to discuss "a business goods proposal." (Doc. 22-Pg.3.) When Jekyll's general counsel returned that call, Mr. Szweda asked whether Jekyll would consider selling its www.summerwaves.com domain. (*Id.* at 3-4.) There is no indication from Jekyll's contemporaneous notes of the conversation that Mr. Szweda identified or represented himself as calling on behalf of PML. (*Id.* at 12, 14.) Mr. Szweda, in a sworn affidavit and under oath at

deposition, explained that he called Mr. Hooks on behalf of Polygroup Services N.A., Inc., not PML. (Doc. 25-1, at 2; Doc. 51-21, at 54:3-5.) Polygroup Services N.A. would have been the Polygroup entity purchasing the www.summerwaves.com domain "because it is Polygroup Services N.A. . . . that controls and operates the Polygroup.com and Polygroupstore.com websites in the USA." (Doc. 25-1, at 2.) Jekyll's notes from the conversation, in fact, refer to the "Polygroup.com" website operated by Polygroup Services N.A. (Doc. 22-Pg. 12.)

6.  Sales from the "Polygroup" Website.

In search of proof that PML used Jekyll's trademark in United States commerce, several of Jekyll's attorneys purchased "Summer Waves"-branded products from that www.polygroup.com website. (Doc. 21-Pgs. 3-4, Doc. 23-Pgs. 3-5; Doc. 24-Pgs. 2-4.) That website, however, is not operated by PML; it is operated by Polygroup Services N.A., as the website itself explicitly and repeatedly states. (Doc. 21-Pgs. 22, 25, Doc. 23-Pgs. 14, 17, "TM & © Polygroup Services N.A., Inc. All Rights Reserved. As used herein, "Polygroup" refers to our brand and not to any single or particular company within the Polygroup® family of companies."). The ordered products were shipped not by PML but by

"Polygroup Services N.A. in El Paso, Texas." (Doc. 21-Pg. 49; Doc. 23-Pgs. 4, 38.) The packing slip identified the sender as "Polygroup Services N.A." and stated, "Thank you for the purchase[.] Polygroup Services N.A." (Doc. 21-Pg. 51; Doc. 23-Pg. 40.)

## III. Standard of Review.

This Court reviews a district court's dismissal for lack of personal jurisdiction *de novo*. *See Don't Look Media LLC v. Fly Victor Limited*, 999 F.3d 1284 (11th Cir. 2021).

## SUMMARY OF THE ARGUMENT

PML is a foreign-based intellectual property holding company. Though PML has registered certain trademarks in the United States, it has never marketed, sold, imported, or distributed any products in the United States, or otherwise used those marks in commerce in the United States. Other third-party companies have, including Polygroup Services, N.A., Inc. (a Delaware company) and a number of large big-box and online retailers. Nevertheless, Jekyll sued *only* PML for trademark infringement and unfair competition in this case and failed to name Polygroup Services, N.A., Inc. in either its complaint or its amended complaint. The district court correctly concluded that it lacked specific

personal jurisdiction over PML under Federal Rule of Civil Procedure 4(k)(2) for Jekyll's claims.

Jekyll argues on appeal that the district court's decision was based on "the wrong standard" (Br. at 18), a "but-for" test of the relatedness of PML's contacts with the relevant forum that was overruled by the Supreme Court in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021). Jekyll claims that "[w]ith the correct standard applied, the facts establish [personal jurisdiction over PML]." (Br. at 20.) The problem for Jekyll is that it invited the district court to make that very error. Jekyll, not PML, first told the district court that its "inquiry must focus on the ***direct causal relationship*** among the defendant, the forum, and the litigation." (Doc. 17-Pg. 9.) Jekyll never thereafter argued to the district court that a "but-for" or "direct causal relationship" was the improper standard despite the fact that Jekyll cited *Ford Motor* for other issues in its briefing. Even when asked directly by the district court how it could meet that "but-for" standard, Jekyll argued substantively that the "but-for" standard had been met. Because Jekyll invited the district court's error, repeatedly, it cannot be heard to

complain about it on appeal. Because that invited error premises the entirety of Jekyll's appeal, the district court's decision should be affirmed.

Even under the *Ford Motor*-clarified test for specific personal jurisdiction, Jekyll's arguments on appeal fail. PML is a foreign-based intellectual property company that is not involving in marketing, selling, importing, or distributing any potentially infringing products in the United States. Its registration of trademarks and its licensing of those trademarks for third parties to use in the United States fails to provide a sufficiently strong connection with the forum and Jekyll's claims on which to justify the assertion of personal jurisdiction. Contacts with the United States by those third parties actually using the allegedly infringing trademarks here cannot be attributed to PML for jurisdictional purposes consistent with the requirements of due process.

Because jurisdiction over PML is lacking for Jekyll's claims of trademark infringement and unfair competition, dismissal of those claims leaves no independent basis for the district court to exercise subject matter jurisdiction over Jekyll's trademark cancellation claim under 15 U.S.C. § 1119.

# ARGUMENT

## I. This Court Should Not Review Error Invited by Jekyll.

Jekyll's argument on appeal is premised on the idea that the district court erred by applying an outdated "but for" test to determine whether Polygroup Macau's contacts "arose out of or were related to [Jekyll's] claims" for purposes of the personal-jurisdiction analysis. (Br. at 18-19.) That error, however, is not reviewable on appeal because Jekyll invited it. "[C]ourts are precluded from reviewing errors invited by the challenged party. This is true even if plain error would result." *United States v. Bird*, 79 F.4th 1344, 1353 (11th Cir. 2023) (citations and quotation marks omitted).

Jekyll invited that error in its opposition to PML's original motion to dismiss. (Doc. 17.) There, Jekyll explicitly told the district court that in the context of specific personal jurisdiction a "but-for" test applied. According to Jekyll, "[t]he Court's 'inquiry must focus on the ***direct causal relationship*** among the defendant, the forum, and the litigation." (Doc. 17-Pg. 9.) For this proposition, Jekyll cited – and indeed, quoted from – this Court's decision in *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210 (11th Cir. 2009). (Doc. 17-Pg. 9.) The next sentence

in *Oldfield* after the "direct causal relationship" portion quoted by Jekyll restates the necessary "direct causal relationship": "[n]ecessarily, the contact must be a ***'but-for' cause*** of the tort." [6]  558 F.3d at 1222-23 (emphasis added).

At oral argument on PML's motion to dismiss, the very first question posed by the district court to Jekyll's counsel was whether Jekyll could establish that direct, but-for causation under the *Oldfield* test:

> THE COURT:  Ms. Quicker, if you will approach.  And let's start where we started with Ms. Carron, and that is she says, So what under 4(k)(2) if we registered [the trademark]?  . . . That's not necessary; that's not but-for causation . . . So how does registering get you anywhere under 4(k)(2)?

(Doc. 70-Pg. 13.)  Jekyll's response, as summarized by the district court, was ***not*** that a but-for test was inappropriate, but rather that the but-for test was satisfied here: that PML "did more than register [the

---

[6]  Jekyll, not PML, was the first to argue this test to the district court. In PML's initial motion to dismiss, PML argued that "[t]he relationship among the defendant, the forum, and the litigation . . . [is] the central concern of the inquiry into personal jurisdiction." (Doc. 10-Pg. 10.)  PML did not characterize the test as a "but-for" test or argue that a direct causal relationship was necessary, and it did not cite *Oldfield*. After Jekyll's response setting out the "direct causal relationship" requirement, however, PML did accept that "[t]he Eleventh Circuit requires a defendant's activity in the forum state to be a 'but-for' cause of Plaintiff's claims."  (Doc. 25-Pg. 16.)

trademarks]; [PML] licensed [the trademarks] and ***that was why all this happened***." (*Id.* at 21, emphasis added.)

Jekyll reiterated this incorrect *Oldfield*-based test to the district court when PML renewed its motion to dismiss for lack of personal jurisdiction after the close of jurisdictional discovery. In opposition to that renewed motion, Jekyll adopted wholesale all of its original arguments ("For the reasons explained below and previously submitted . . . .") and referenced specifically its earlier brief in opposition ("Dkt. 17"). (Doc. 51-Pg. 1.) At no point did Jekyll ever tell the district court that the erroneous "but-for" test it introduced into the briefing and argument was incorrect.

From the outset of Jekyll's introduction of the "but-for" test to the district court, that test had been repudiated by the Supreme Court. Jekyll filed its response to PML's motion to dismiss on August 17, 2021. (Doc. 17.) Months earlier, on March 25, 2021, the Supreme Court decided *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021).[7] There, the Supreme Court held that a "causation-only

_____

[7]     Jekyll cannot claim that it was unaware of the *Ford Motor* decision. It cited *Ford Motor*, but only once, and only for the proposition

approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities," 141 S. Ct. at 1026, and that "proof that the plaintiff's claim came about because of the defendant's in [forum] conduct" is not required, *id.*

At no point below did Jekyll argue this clarified *Ford Motor* test to the district court. Instead, the district court below accepted Jekyll's *Oldfield*-based "direct causal relationship" test and analyzed PML's contacts with the United States under that test to determine whether personal jurisdiction over PML existed for Jekyll's claims. (Doc. 68.) Throughout its order, the district court found the lack of a direct causal relationship to be the root reason for rejecting the existence of personal jurisdiction over PML:

- "At minimum, for a suit to arise out of or be related to a contact, the contact must be a but-for cause of the tort." (Doc. 68-Pg. 20, quoting *Oldfield*; *see also id.* at 29.)

- "In this case, PML's contacts with its Atlanta counsel are not the but-for cause of [Jekyll's] claims. (*Id.* at 20.)

---

that "[w]hen a company like [Defendant] serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." (Doc. 17-Pg. 2.) Nowhere did Jekyll discuss *Ford Motor*'s repudiation of the "direct causation" / "but for" test for relatedness of forum contacts.

- "Due to the attenuated causal connection between registration and licensing, [Jekyll's] claims do not arise from or relate to PML's contacts." (*Id.* at 29.)

- "[T]he causal connection in this case is attenuated . . ., rather than direct." (*Id.* at 32.)

- "[T]he causal connection between PML's registration and licensing of the marks and [Jekyll's] claims is attenuated." (*Id.* at 34.)

- "Ultimately, these contacts do not form a close and substantial causal relationship between the relevant contacts and the alleged tort. As such, [Jekyll's] claims do not arise from or relate to PML's registration or licensing of PML's summer waves marks." (*Id.* at 35.)

Here on appeal, Jekyll's entire argument turns on the error it invited the district court to make:[8]

- "The district court held [that specific personal jurisdiction did not exist over PML under Rule 4(k)(2)] largely because it applied an incorrect standard." (Br. at 17.)

- "The district court's 'but for' test is the wrong standard." (Br. at 18.)

---

[8] Jekyll conclusorily argues in a single paragraph of its brief that "even applying the *wrong* 'but for' standard, there is *still* personal jurisdiction." (Br. at 28.) It claims that "[t]he infringement at issue literally could not happen 'but for'" PML permitting separate Polygroup companies to use the market in the United States. (*Id.*) But, as the district court explained, "these contacts do not form a 'close and substantial causal relationship between the relevant contacts and the alleged tort." (Doc. 68-Pg. 25, cleaned up).

- "With the correct standard applied, the facts establish [personal jurisdiction over PML]." (Br. at 20.)

- "Applying the correct standard, there can be little question that personal jurisdiction exists here." (Br. at 28.)

Because Jekyll invited this very error, its arguments on appeal should be rejected, and the district court's decision affirmed. *See In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1248-49 (11th Cir. 2006) (applying invited-error doctrine to reject appellants' argument that district court lacked personal jurisdiction over him); *Davis v. LG Chem, Ltd.*, 849 F. App'x 855, 858 n.1 (11th Cir. 2021) (refusing to address additional theory of personal jurisdiction where appellant "expressly asked the district court not to consider [it]").

## II. Specific Personal Jurisdiction Does Not Exist Over PML on Jekyll's Claims.

Even if the invited-error doctrine does not entirely preclude this appeal, Jekyll's arguments still fail. Due process does not allow for the assertion of specific jurisdiction over PML under Fed. R. Civ. P. 4(k)(2).

### A. Due Process Requirements under Rule 4(k)(2).

Federal Rule of Civil Procedure 4(k)(2) "permits the exercise of personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation

as a whole, but is without contacts to satisfy the long-arm statute of any particular state." *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999). Multiple requirements exist for the application of personal jurisdiction through Rule 4(k)(2), *see Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012), but the only requirement really at issue in this appeal is whether "the exercise of jurisdiction satisfies due process requirements," *id.*

Jurisdiction over a particular defendant satisfies due process[9] where that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). The due process requirements for specific personal jurisdiction, the only type of personal jurisdiction over PML that Jekyll

---

[9]    Jurisdiction under Rule 4(k)(2) technically is analyzed under the Fifth Amendment's Due Process Clause, *see Fraser v. Smith*, 594 F.3d 842, 849 (11th Cir. 2010), but because "the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, decisions interpreting the Fourteenth Amendment's Due Process Clause guide us in determining what due process requires in the Fifth Amendment jurisdictional context." *Oldfield*, 558 F.3d at 1219 n.25.

argues exists here, are analyzed in three steps. *See SkyHop Technologies, Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023). First, the Court asks "whether a plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum." *SkyHop*, 58 F.4th at 1229 (cleaned up). "[T]hen we evaluate whether the defendant purposefully availed himself of the privilege of conducting activities within the forum." *Id.* "[F]inally, we assess whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Id.*

Under Rule 4(k)(2), the defendants' contacts with the United States as a whole are relevant, rather than the typical focus on contacts with a particular forum state under a more typical personal-jurisdiction analysis. *See Oldfield*, 558 F.3d at 1220. The analysis remains *claims-specific*: "We must review each cause of action to see if any of them sufficiently connect [the defendant] to the jurisdiction such that the exercise of jurisdiction over him is appropriate." *Rhodes v. Unisys Corp.*, 170 F. App'x 681, 684 (11th Cir. 2006). The burden is on the plaintiff to "produce evidence supporting jurisdiction." *Meier v. Sun Int'l Hotels*, 288 F.3d 1264, 1269 (11th Cir. 2002).

**B.** **Jekyll's Claims Did Not Arise Out Of And Are Not Sufficiently Related To PML's Very Limited Contacts with the United States.**

Jekyll must show that its claims "arise out of or relate to" PML's contacts with the United States. *SkyHop*, 58 F.4th at 1229. As *Ford Motor* clarified this first prong of the specific-personal-jurisdiction analysis, the plaintiff's claims need not be directly caused by the defendant's contacts; the "relate to" half of the "arise out of or relate to" step "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor*, 141 S. Ct. at 1026. However, "[t]hat does not mean anything goes." *Id*. The "arise out of or relate to" language here "incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id*. There still must be "the essential foundation of specific jurisdiction": a "strong relationship among the defendant, the forum, and the litigation." *Id*. at 1028; *see SkyHop*, 58 F.4th at 1229.

Many of the contacts relied upon by Jekyll in arguing for specific personal jurisdiction over PML are ***entirely unrelated*** to this litigation. Those few contacts between PML and the United States that have at least some logical connection with Jekyll's claims fall far short of creating

the "strong relationship" necessary for specific personal jurisdiction over PML here.

1.  <u>Registration of Trademarks and Patents.</u>

Jekyll says that a sufficiently strong relationship exists between the United States, PML's contacts with the United States, and its claims because PML "has filed registrations, registered, and been granted multiple trademarks and patents in the United States." (Br. at 20.)

However, this case has nothing to do with many of those trademarks and patents, and PML's pursuit of those other trademarks and patents provides no basis for the assertion of specific personal jurisdiction over it as to Jekyll's particular claims. *See Simone v. VSL Pharmaceuticals, Inc.*, Civil Action No. TDC-15-1356, 2017 WL 658711, at *8 (D. Md. Feb. 16, 2017) ("Because VSL's claims . . . relate to the unlawful use of VSL's trademarks, none of the [defendant's] trademark applications other than those for marks containing the term 'VSL' could arguably be jurisdictionally relevant.").

As to the specific Summer Waves trademarks registered by PML, those registrations are insufficiently related to Jekyll's claims to provide a basis for jurisdiction. Jekyll cites no case in which the fact of trademark

registration alone has been found sufficient to confer personal jurisdiction over the registrant in a trademark infringement case,[10] and "[t]he weight of authority rejects basing federal long-arm jurisdiction on the mere registration of a U.S. trademark." *See Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 136 (S.D.N.Y. 2000) (collecting cases); *Fumoto Giken Co. v. Mistuoka*, No. CV 14-9797, 2015 WL 12766167, at *5 (C.D. Cal. Apr. 16, 2015) ("This Court is not persuaded that the mere registration of a trademark with the PTO, without more, amounts to the type of minimum contacts which would justify haling a foreign defendant into federal court.").

There is good reason for hesitance in equating trademark registration with the availability of nationwide personal jurisdiction over a foreign registrant like PML. By statute, federal trademark-infringement and unfair-competition claims turn on the *use* of a trademark in commerce, not whether the defendant ever registered its mark. *See* 15 U.S.C. §§ 1114 ("Any person who shall . . . use in commerce

---

[10]    Jekyll cites *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264 (4th Cir. 2003), for the idea that "trademark registrations and issued patents confer significant legal rights in the United States." (Br. at 21.) That case had nothing to do with personal jurisdiction.

. . ."), 1125 ("Any person who, on or in connection with any goods or services . . . uses in commerce . . ."). Jekyll's claims clearly do not arise out or relate to PML's registration, as registration does not constitute an infringing use of Jekyll's marks in commerce. *See Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 345 (5th Cir. 2002) (holding that "QTI's claims do not sufficiently 'arise out of or relate to' the contacts [of defendant] indicated by the documents filed with the [United States Patent and Trademark Office]," because they "do not involve [defendant] using QTI's mark in commerce in the United States").[11]

### 2. Prior Lawsuits.

Jekyll contends that a sufficient relationship exists between PML's contacts with the United States and its claims because PML "has extensively litigated its intellectual property rights, including as a plaintiff in infringement suits" in the United States. (Br. at 20.) According to Jekyll, "these contacts (which involve *these specific*

---

[11]    Perhaps there are situations where a defendant's registration of a trademark would be sufficiently related to a plaintiff's claims – for instance, if the plaintiff alleged that the filing itself was the basis for its injury. *See, e.g., Simone,* 2017 WL 658711, at *8 (D. Md. Feb. 16, 2017) ("While a USPTO application might be a jurisdictionally significant contact under Rule 4(k)(2) *if that filing is itself the basis of the alleged injury*.") But "that is not the situation here." *Id.*

*trademarks*) are connected at the hip to the litigation here." (Br. at 24, emphasis in original.)

To start, Jekyll is misleading this Court when it says that PML's prior United States litigation involved the "specific trademarks" at issue in this case. PML has never been a party to any lawsuit in the United States specifically involving any SUMMER WAVES trademark (other than the instant suit). Most of the prior lawsuits in the United States involving PML related to patents held by PML for various components of artificial Christmas trees. (*E.g.,* Doc. 21-4, at 107-54, 156-87.)

The fact that PML has been involved in intellectual property lawsuits in United States courts involving completely different products, parties, and facts adds nothing to the analysis of whether PML should be subject to suit here. *See also V & A Collection , LLC v. Guzzini Props.*, No. 20-CIV-1797, 2021 WL 982461, at *4-*5 (S.D.N.Y. Mar. 15, 2021) (rejecting argument that jurisdiction was proper because defendant filed and participated in a prior case in the same forum); *Biosciences, Inc. v. Cellectis S.A.*, No. 5:11-CV-00513, 2012 WL 12915294, at *3 (E.D.N.C. Nov. 20, 2012) (rejecting argument that defendant waived jurisdiction by filing a "related" patent case that did not "involve the same parties or

arise out of the same transaction or same nucleus of operative facts"). "A defendant may have many meaningful ties to the forum, but if they do not connect to the plaintiff's claim, they cannot sustain our power to hear it." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021).

None of PML's prior lawsuits in the United States are related, in any way, to the trademark infringement claims brought by Jekyll here, and Jekyll is entirely wrong to suggest otherwise to this Court. Any statements made by PML regarding jurisdiction or its U.S.-related contacts in those unrelated lawsuits do not govern here. *See In re Raiford*, 695 F.2d 521, 523 (11th Cir. 1983) ("Normally judicial admissions are binding for the purpose of the case in which the admissions are made, not in separate and subsequent cases."); *Saudi v. Acomarit Mar. Servs., S.A.*, 245 F. Supp. 2d 662, 679 (E.D. Pa. 2003) (holding that plaintiff's admission in a previous case that jurisdiction was proper under Rule 4(k)(2) was not binding in the pending case).

### 3. Licensing/Permitting Arrangements with Other Polygroup Companies.

Jekyll argues that a sufficient relationship exists because PML "allowed its related entities unfettered permission to use [the Summer Waves] marks in commerce in the United States." (Br. at 20-21.)

However, "[n]either this nor any other circuit has held that specific jurisdiction may arise solely from a defendant licensor's non-exclusive licenses to third parties who sell allegedly infringing products in the forum state." *Diece-Lisa Indus., Inc. v. Disney Enterp., Inc.*, 943 F.3d 239, 253 (5th Cir. 2019).

The Federal Circuit's decision in *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), is instructive. There, that Court held that a nonresident defendant that only engaged in "licensing and enforcing the rights associated with two patents" was not subject to personal jurisdiction, even though 34 of the defendant's licensees sold patented products in the relevant forum and the defendant received royalty income from those licensees. 148 F.3d at 1359, 1361-62. Many other federal decisions, following *Red Wing Shoe*'s reasoning, have refused to find personal jurisdiction over a trademark licensor. *See, e.g., Astor Chocolate Corp.*, 510 F. Supp. 3d at 136-37 ("[T]he Court is similarly unpersuaded, absent any authority cited to the contrary, that a trademark licensing agreement between foreign parties subjects the licensor to jurisdiction in any U.S. district court solely because the agreement does not forbid a licensee from selling products into the United

States."); *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407, 2020 WL 4810778, at *8 (E.D.N.Y. Aug. 11, 2020) ("[I]t would offend due process to premise personal jurisdiction solely on [defendant's] status as an owner and licensee of trademarks that appear on products distributed in New York by its licensee."); *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 736-37 (N.D. Ill. 2011) ("The mere existence of a licensor-licensee relationship, without more, is insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction . . . . As a general rule, personal jurisdiction does not exist over a licensor by virtue of its status if does not exercise control over the licensee's sales activities and has no dealings with the licensee beyond the receipt of royalty income."); *Gilman & Bedigian, LLC v. Sackett*, No. 19-3471, 2021 WL 4417250, at *6 (D. Md. Sept. 27, 2021) ("It would not comport with due process for this court to exercise personal jurisdiction over these defendants merely because they licensed their trademarks to a third party who in turn conducted business in the state.").

Again, the act of licensing is not an infringing use in commerce and thus does not create or sufficiently relate to Jekyll's claims of

infringement and unfair competition to justify personal jurisdiction over PML. *See Thoroughbred Legends LLC v. The Walt Disney Co.*, No. 07-CV-1275, 2008 WL 616253, at *6 (N.D. Ga. Feb. 12, 2008) ("Without more, [that plaintiffs granted a license for a trademark] does not create a genuine issue of material fact as to whether Plaintiffs used [the alleged mark] as a trademark."); *USA Mgmt. Grp., LLC v. Fitness Publications Inc.*, No. 14-22477, 2015 WL 11233075, at *3, 5 (S.D. Fla. Mar. 4, 2015) (finding no precedent to support plaintiff's claim "that the 'sale of a licensed product by a licensee constitutes use in commerce on the part of the licensor"); *Duck Commander, Inc. v. TNP Prods., Inc.*, No. 10-1790, 2011 WL 4973880, at *4 (W.D. La. Sept. 12, 2011) ("Filing a trademark application and licensing one's mark to another, even with knowledge of a third party's superior rights to the mark, are not activities prohibited by the Lanham Act.  Rather, it is the use in commerce of a registered mark that gives rise to liability.").

Jekyll points to a single decision – *Universal Music MGB NA, LLC v. Quantum Music Works, Inc.*, 769 F. App'x 445 (9th Cir. 2019) – for the idea that "a simple licensing arrangement [is] sufficient on its own to establish personal jurisdiction in infringement cases under Rule 4(k)(2)."

(Br. at 25.) The great weight of authority on these issues (discussed *supra*) stands in contrast to *Universal Music*. Moreover, as the district court here itself pointed out when Jekyll cited *Universal Music* below, Jekyll's characterization of that case is significantly distorted to ignore that the licensor there had significant other contacts with the forum:

> In addition to licensing a copyright, the *Universal Music* defendant ran 'an English-language website which 'allowed and promoted the transaction of business within' the United States and encouraged users to 'enter into contracts that involve the knowing and repeated transmission of computer files over the Internet." [Jekyll] does not point to similar express targeting by PML of the United States in its licensing agreements or through the surrounding circumstances.

(Doc. 68-Pg. 31 n.8.) The situation here is different: "while PML licensed use of the mark, [Jekyll] has not alleged that PML exercised any continuing control or obligation over the license, that the licenses were exclusive, or that PML retained control over its licensee's sales or marketing." (Doc. 68-Pg. 34.)

Citing *Breckinridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356 (Fed. Cir. 2006), Jekyll states that "the structure of [PML's] intellectual property licenses is important for personal jurisdiction purposes." (Br. at 26.) Specifically, Jekyll contends that PML is subject to jurisdiction in the United States because PML's

licensees or permittees "do not pay royalties or revenue" to PML and use the mark in the absence of "any written license." (Br. at 25.) Jekyll says that these features make this arrangement "far more significant than an exclusive license with a . . . royalty or cross-licensing payment." (Br. at 27.) In sum, it is Jekyll's argument here that these licenses create a jurisdictional hook against PML because PML **lacks** any significant control, oversight, or involvement in its licensees' uses of the Summer Waves trademarks in the United States.

Jekyll's argument turns the actual reasoning of *Breckinridge Pharmaceutical* on its head. In that case, the Federal Circuit did recognize that "[w]here a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement." 444 F.3d at 1366. If that close examination revealed that the licensor exercised extensive control over the licensee's use of the mark or was extensively involved in the licensee's business within the relevant forum, then personal jurisdiction over the licensor might be appropriate.[12] *Id.*

---

[12]     The *Breckinridge Pharmaceuticals* court suggested that personal jurisdiction over a licensor could be proper where the licensing

But, as the *Breckinridge Pharmaceutical* court made clear, personal jurisdiction **is not appropriate** over a licensor where "the defendant has successfully licensed [intellectual property] in the forum state, even to multiple non-exclusive licensees, but does not . . . exercise control over the licensee's sales activities and . . . has no dealings with those licensees beyond the receipt of royalty income." *Id.*

Here, PML has no exclusive licensee for the Summer Waves trademarks within the United States, and there is no evidence that it exercises any control over any of its licensees' activities in the United States. Jekyll itself repeatedly agrees in its brief that PML granted its licensees "unfettered permission" to use its marks (Br. at 13, 21, 22.) Again, as the district court found, "while PML licensed use of the mark, [Jekyll] has not alleged that PML exercised any continuing control or obligation over the license, that the licenses were exclusive, or that PML retained control over its licensee's sales or marketing." (Doc. 68-Pg. 34.) PML's **lack** of control over or involvement in its licensees' use of the

---

arrangement "contemplates a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities." 444 F.3d at1364.

Summer Waves trademarks does not create a basis for personal jurisdiction to be exercised over PML in the United States.

4. <u>Actions of Separate Polygroup Companies.</u>

Jekyll suggests that the use of the SUMMER WAVES marks in the United States by PML's "cousin[s]" (Br. at 28) – the separate corporate entities within the Polygroup family of companies who actually do advertise, import, and sell products for the United States market – should equate to jurisdiction over PML. However, "[g]enerally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary[13] is doing business there." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002). "It is well established that as long as a parent and subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000).

---

[13] To be clear, of the three other Polygroup companies discussed by Jekyll in the course of this appeal, only Polygroup Limited (Macau Commercial Offshore) is an actual subsidiary of PML. PML does not have a parent-subsidiary relationship with Polygroup Services, N.A., or Polygroup Trading, though they may have a common parent within the structure of the Polygroup group of companies.

Imputing the contacts of a subsidiary may be appropriate where "the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity." *Meier*, 288 F.3d at 1272 (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2002)). But "[g]enerally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) (citing pre-circuit-split 5th Cir. cases); *see also See Special Industries, Inc. v. Zamil Group Holding Co.*, 578 F. App'x 325, 333 (5th Cir. 2014) ("The alter ego theory of jurisdiction . . . requires proof of a greater than normal degree of control over the daily operations of the subsidiaries.").

Jekyll has not demonstrated and cannot demonstrate that PML sufficiently controls any other Polygroup entity such that the contacts of that other entity with the United States are attributable to PML for purposes of personal jurisdiction. Jekyll has not even attempted to set out the necessary predicates for that kind of argument in its brief on

appeal.  Nor has Jekyll demonstrated here that the corporate formalities between PML and other Polygroup entities were so ignored as to fuse those companies for jurisdictional purposes.

> 5.  Attempt to Purchase Domain Name.

Jekyll argues that personal jurisdiction over PML is appropriate because PML "reach[ed] out to Jekyll to buy its domain name."  (Br. at 22-23.)  As summarized above (Statement of Case, section II.D.5), an in-house attorney for the Polygroup companies – Eric Szweda – called Jekyll in January 2021 with a request to purchase Jekyll's www.summerwaves.com domain.

As an initial matter, it is hard to follow any logic by which Jekyll's claims of trademark infringement and unfair competition arise out of or relate to this voluntary contact with Jekyll by Mr. Szweda.  That contact does not itself constitute or evidence infringing activity.  If anything, the open nature of the contact reflects that the Polygroup entities believed that their uses of PML's SUMMER WAVES trademarks had been and continued to be perfectly legitimate.  By January 2021, when Mr. Szweda made contact with Jekyll, PML's SUMMER WAVES trademarks had been registered in the United States for about five years, since 2016.

(Docs. 6-2, 6-3, 6-4.) When PML sought to register those marks, the marks proceeded through the require public comment period with no objection made by Jekyll. PML's trademarks were registered, openly, for use in connection with distinct goods under a different International Code classification than Jekyll's services-related Summer Waves trademark. Products bearing those marks had been sold openly in the United States by big-box retailers like Wal-Mart and online through marketplaces like Amazon, without any complaint by Jekyll, for about the same amount of time. This contact between Mr. Szweda and Jekyll may have provided a random impetus for Jekyll to bring an infringement action, but those kinds of "random, fortuitous, or attenuated contacts" hardly suffice for personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Even if this contact is somehow sufficiently related to Jekyll's claims, it is not a contact that is attributable to PML. There is no evidence in the record that Mr. Szweda ever identified or represented himself as acting on behalf of PML during those contacts with Jekyll – not even in Jekyll's contemporaneous notes of its conversations with Mr. Szweda. (Doc. 22-Pgs. 12, 14.) Nor is there any reason to assume that

Mr. Szweda was acting on behalf of PML. To the contrary, Mr. Szweda confirmed, in a sworn affidavit and in a deposition under oath, that he was acting on behalf of Polygroup Services, N.A, Inc., not PML, during his contacts with Jekyll.[14] Though Mr. Szweda provides counsel to the entire group of companies, he is employed only by Polygroup Holdings Limited and Polygroup N.A., Inc., not PML (Doc. 25-1, at 1.) Polygroup Services N.A., Inc., not PML, owned and operated all of the Polygroup websites in the United States. (Doc. 25-1, at 2; Doc. 47-1, at 116:23-117:3.) PML had no operations, employees, offices, bank accounts, websites, or other involvement with the United States at all; Polygroup Services N.A. did. (*See supra* Statement of the Case, section II.B.) PML

---

[14] Jekyll claims that the district court "did not accept" Mr. Szweda's "testimony" that he was acting on behalf of Polygroup N.A. in this interaction. (Br. at 8 n.2.) But the district court did not discuss or grapple with the evidence presented by PML; instead continuing to cite to the rebutted allegations of Jekyll's complaint and unsupportive portions of Mr. Szweda's deposition. (Doc. 68-Pgs. 3, 18.) To the extent the district court did make a factual finding on this point, that finding was clear error. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). Other the bare allegation of Jekyll's complaint, which itself is not evidence after being controverted by PML's submissions, there is **nothing** to suggest that PML was involved at all in Mr. Szweda's contact with Jekyll.

was not even an operating entity, just a holding company. (*Id.*) PML was not itself involved in marketing, importing, or selling Summer Waves-branded products, or any products, in the United States through websites or otherwise; Polygroup Services N.A. was. (*See supra* Statement of the Case, sections II.B and II.C.)

To ascribe Mr. Szweda's contact with Jekyll to PML entirely ignores the restricted reality of PML's position and purpose in the Polygroup family of companies, and it amounts to yet another example of Jekyll's attempt to amalgamate contacts of distinct corporate entities to impose personal jurisdiction over PML in violation of due process.

## C. PML Has Not Purposefully Availed Itself of the United States Forum.

Due process requires also that "the defendant purposefully availed himself of the privilege of conducting activities within the forum." *Id*. *SkyHop*, 58 F.4th at 1229. To meet the purposeful availment requirement for specific personal jurisdiction, a plaintiff "must show that the defendant deliberately reached out beyond its home – by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (cleaned up). "The contacts must be the defendant's own choice and not 'random,

isolated, or fortuitous.'" *Id.* Purposeful availment can be shown in a couple of ways: the "effects test" or the "minimum contacts" test. *See Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1275-76 (11th Cir. 2022). Jekyll contends that PML purposefully availed itself of the United States forum under both of those tests, but neither test is actually satisfied here.

1. The "Effects Test."

The "effects test" focuses on whether there is an tortious act attributable to the defendant that "was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state." *Del Valle*, 56 F.4th at 1276.

Jekyll says that PML meets the "effects test" for purposeful availment because PML tortiously "registered the infringing marks in the United States and then granted permission for [those marks] to be used in commerce in the United States." (Br. at 12-13; *see also* Br. at 30-31.) However, as already discussed, neither the act of registering a trademark or licensing that trademark constitutes a "tortious" act; only the use of that mark in commerce creates any basis for Jekyll's claims of trademark infringement and unfair competition. *See supra* Argument sections II.B.1, II.B.3. PML ***has not*** itself used the Summer Waves

marks in commerce in the United States, not at all, and it cannot be attributed the actual use of those marks by related but separate Polygroup companies without violating due process. *See supra* Argument sections II.B.4. Because PML lacks any tortious act in the United States, there consequently is no basis on which to premise PML's purposeful availment under the "effects test."

Jekyll glosses over this problem by claiming that "it is well established in this circuit that trademark infringement is the type of intentional tortious act that will implicate the effects test." (Br. at 30.) However, the two Eleventh Circuit cases it cites for this proposition prove PML's point. Those cases both involved defendants that themselves committed a "tortious" infringing act in the relevant forum. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008) (defendant "us[ed] [plaintiff's] trademarked name and his picture on a website accessible in Florida in a manner to imply [plaintiff's] endorsement of [defendant] and his products"); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1358 (11th Cir. 2013) (defendant had "fully interactive . . . website accessible in Florida [and] other contacts with Florida – through selling and distributing infringing goods through his website to Florida

consumers"). The rationale espoused in those decisions cannot be extended to justify personal jurisdiction over a non-resident defendant who did not itself commit any tortious act in the relevant forum.

2. The "Minimum Contacts" Test.

The "minimum contacts" test for purposeful availment "assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Del Valle*, 56 F.4th at 1276.

Jekyll again points to all of PML's supposed contacts with the United States to support its argument that the "minimum contacts" test for purposeful availment is met here: primarily, that PML registered trademarks and patents and litigated cases involving those trademarks and patents, that PML licensed and permitted use of its trademarks and patents to Polygroup companies and other companies, and that a Polygroup attorney contacted Jekyll to attempt to purchase Jekyll's domain name. (Br. at 33.)

Those contacts no more "relate to [Jekyll's] cause of action" for purposes of the "minimum contacts" test than they did under the *Ford Motor*-clarified first prong of the due process inquiry. As already discussed *supra* Argument section II.B, many of the contacts argued by Jekyll are entirely ***unrelated*** to Jekyll's claims. No jurisdictional hook exists here from the fact that PML registered other non-SUMMER WAVES trademarks and patents (*id.*, section II.B.1) or from the fact that PML litigated cases involving those other trademarks and patents against different parties under different sets of facts (*id.*, section II.B.2). Alleged contacts with the United States by other Polygroup companies or their representatives are not contacts by PML at all (*id.*, section II.B.4), much less sufficiently related contacts on which to premise purposeful availment for specific personal jurisdiction.

At the heart of Jekyll's argument is that PML should be subject to suit here in the United States because it registered and licensed SUMMER WAVES trademarks to other companies for use in the United States. But registering and licensing trademarks in the United States does not demonstrate purposeful availment. *See Alcon Vision*, 2020 WL 4810778, at *5 (defendant "simply owning and licensing trademarks

which appeared on products distributed in [the forum] by its licensees did not purposefully avail itself of the privilege of conducting activities within [the forum]"); *Astor Chocolate Corp.*, 510 F. Supp. 3d 108, 136 (S.D.N.Y. 2020) (foreign IP holding company did not purposefully avail itself of national forum by registering trademarks and licensing those trademarks to others who sold products bearing the mark in the U.S.); *Websters Chalk Paint Powder, LLC v. Annie Sloan Interiors, Ltd.*, No. 13-CV-2040, 2014 WL 4093669, at *1-2, 9 (N.D. Ga. Aug. 18, 2014) (foreign entity did not purposefully avail itself of forum by licensing U.S.-registered trademarks to a U.S. distributor that sold products in the forum); *Smith v. Home Depot USA, Inc.*, 294 F. App'x 186, 190-91 (6th Cir. 2008) (finding contacts by German company that licensed trademarks to U.S. subsidiary for use in connection with sale of subsidiary's products was "too random, fortuitous, and attenuated for a finding of purposeful availment").

**D.  Fair Play and Substantial Justice.**

The third and final step in the due-process inquiry for specific personal jurisdiction is "whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice."

*SkyHop Technologies, Inc.* 58 F.4th at 1229.  Fair play and substantial justice does not inhere in requiring a foreign IP holding company with no involvement in the actual marketing, sale, importing, distribution, or other use of allegedly infringing products in the United States, to face a trademark infringement and unfair competition lawsuit in the United States. *See Alcon Vision*, 2020 WL 4810778, at *8 ("[I]t would offend due process to premise personal jurisdiction solely on [a foreign IP holding company's] status as an owner and licensor of [U.S.] trademarks that . . . appear on products distributed [in the forum] by its licensee."); *Gilman*, 2021 WL 4417250, at *6 (finding defendant's actions, including licensing, "are not a 'surrogate for presence' and are therefore not capable of 'render[ing] the exercise of sovereignty just'" where defendants "merely . . . licensed their [registered U.S.] trademarks to a third party who in turn conducted business in the state").

## III. Jurisdiction Does Not Exist Over Jekyll's Trademark Cancellation Claim.

Personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) also requires that "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction."  Fed. R. Civ. P. 4(k)(2)(A). PML argued before the district court that personal jurisdiction over Jekyll's

trademark cancellation claim was not appropriate under Rule 4(k)(2) because that claim could be brought by Jekyll before the Trademark Trial and Appeal Board and, if unsuccessful there, be appealed to the United States District Court for the Eastern District of Virginia. (Doc. 10-Pgs. 17-18; Doc. 47-Pg. 16.)

As Jekyll points out here on appeal, PML did not concede before the district court that it was "subject to jurisdiction in any state courts of general jurisdiction," in line with the requirements of Rule 4(k)(2). (Br. at 38.) Rather, PML conceded that it could be subject to suit on the trademark cancellation claim in a federal district court in Virginia, and then only after Jekyll pursued remedies through the Trademark Trial and Appeal Board.

However, the district court's ultimate conclusion remains correct: it lacked jurisdiction over Jekyll's trademark cancellation claim. "A claim for trademark cancellation under § 1119 is insufficient to support federal jurisdiction." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98 (2d Cir. 2011). Rather, a federal district court is empowered to order the cancellation of a registered trademark only in an "action involving a registered mark." 15 U.S.C. § 1119. As Jekyll concedes (Br. at 39), that statute "plainly

narrows the circumstances in which cancellation may be sought – namely, in connection with a properly instituted and otherwise jurisdictionally supportable action involving a registered mark." *Nike, Inc. v. Already, LLC*, 663 F.3d at 98 (2d Cir. 2011); *see also Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir. 1992).

As already discussed *supra* Argument section II, there is no "otherwise jurisdictionally supportable action involving a registered mark." The district court lacked jurisdiction over PML for Jekyll's other claims for trademark infringement and unfair competition. Without those claims, the district court was left with no independent basis to assert jurisdiction over Jekyll's claim for trademark cancellation. The district court rightly dismissed that claim for lack of jurisdiction, and its decision to do so should be affirmed. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001) ("[W]e may affirm [the district court's] judgment on any ground that finds support in the record.").

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted on this 29th day of November, 2023.

GRIFFIN DURHAM TANNER & CLARKSON, LLC

By: /s/ R. Brian Tanner
R. Brian Tanner
Georgia Bar No. 697615
btanner@griffindurham.com
104 West State Street, Suite 200
Savannah, GA 31401
Ph/Fax: (912) 867-9140
*Counsel for Appellee*

# CERTIFICATE OF COMPLIANCE WITH FRAP 32(g)(1)

The undersigned certifies that this Brief complies with the applicable type volume limitations in Rule 32(a)(7). This brief contains 11,451 words, exclusive of the components that are excluded from the word count limitation in Rule 32(f). This certificate was prepared in reliance upon the word-count function of the word processing system (Microsoft Word) used to prepare this brief. This brief complies with the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface using font size 14 Century Schoolbook.

## CERTIFICATE OF SERVICE

In accordance with Rule 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.

This 29th day of November, 2023.

GRIFFIN DURHAM TANNER & CLARKSON, LLC

By:  /s/ R. Brian Tanner
     R. Brian Tanner